UTICA PACKING COMPANY, a Michigan Corporation and David Fenster, Plaintiffs,

v.

Robert BERGLAND, Secretary, U. S. Department of Agriculture and Carole Foreman, Assistant Secretary of Agriculture, and Donald Huston, Administrator of Food Safety and Quality Services and the United States Department of Agriculture, and the United States of America, Defendants.

Civ. A. No. 80–72742.

United States District Court, E. D. Michigan, S. D.

April 14, 1981.

Warren J. Perlove, Southfield, Mich., Leslie C. Schefman, Detroit, Mich., for plaintiffs.

L. Michael Wicks, Asst. U. S. Atty., Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

This matter is before the court on cross-motions for summary judgment, on undisputed facts. Plaintiffs' complaint was filed July 25, 1980, for review of the final decision of the United States Department of Agriculture of June 25, 1980, that federal meat inspection services would be withdrawn from plaintiff Utica Packing Company pursuant to 21 U.S.C. § 671, unless its president, plaintiff David Fenster, disassociates himself from the firm. The Federal Meat Inspection Act, 21 U.S.C. § 601 et seq., requires that all persons engaged in the meat processing industry in interstate commerce participate in the meat inspection program. By the terms of the Order of the Department's Judicial Officer, Utica was given 90 days during which Fenster was to disassociate himself from management of Utica's business, and the period of one year within which Fenster was to divest himself of his 50% ownership of Utica stock. Otherwise, Utica will be suspended from the program.

This court has jurisdiction of plaintiffs' appeal from the administrative decision under 21 U.S.C. § 674, 28 U.S.C. § 1331 and § 2201, and 5 U.S.C. § 702.

On April 18, 1978, plaintiff Fenster was found guilty after a bench trial on four counts of violation of 18 U.S.C. § 201(b), a federal felony statute which provides, in pertinent part, that:

[w]hoever, directly or indirectly, corruptly gives, offers, or promises anything of value to any public official * * * with intent—

(1) to influence any official act; or
(2) to influence such public official * * to commit or aid in committing, or collude in or allow, any fraud, or make opportunity for the commission of any fraud, on the United States; or
(3) to induce such public official * * * to do or omit to do any act in violation of his lawful duty, . . .

Shall be fined not more than $20,000 or three times the monetary equivalent of the thing of value, whichever is greater, or imprisoned for not more than fifteen years, or both, and may be disqualified from holding any office of honor, trust, or profit under the United States.

The Memorandum Opinion and Order of the Honorable Philip Pratt filed in *United States of America v. David Fenster,* 449 F.Supp. 435 (E.D.Michigan, 1978) includes specific findings that the government met its burden of proof beyond reasonable doubt of plaintiff's commission, on four occasions, of every element of the statutory felony. Of course, the guilty verdict of a jury would also constitute such a finding. Plaintiff Fenster had paid $200.00 on each occasion to the Veterinarian supervisor of the five or six lay Inspectors who were assigned by the United States Department of Agriculture during 1976 to inspection of all meat processed at the Utica plant.

In September, 1976, the Utica Plant had been rated by the Regional Office of the United States Department of Agriculture (hereafter USDA), after a plant inspection, as a "one" on a scale of one through four: or at the worst rating assignable. Judge Pratt found as fact that, when the veterinarian (Dr. Reed) advised Fenster of this rating, Fenster made his initial proposition of payments to Reed of $100 to $200 per week. The payments made thereafter resulted in Fenster's conviction; largely because Reed met with Fenster wearing a recording device on each occasion and transcripts of the conversations held were introduced at trial (as they were at the ensuing administrative hearing, and by plaintiffs here). The court found the evidence "overwhelming," largely from the transcripts, that Fenster made the payments to Reed with the corrupt purpose required by 18 U.S.C. § 201(b), rather than as illegal gratuities which are prohibited by the lesser included offense of 18 U.S.C. § 201(f). Judge Pratt wrote, specifically:

It was Dr. Reed's understanding that in return for the money he was to alleviate

Fenster's problems, specifically by reducing the number of line stoppages and by giving the company the benefit of the doubt with regard to hogs of questionable soundness. This understanding is borne out by the transcripts of the recorded conversations between Reed and Fenster. They reveal that while Fenster expected Reed to maintain an appearance of conscientious enforcement (Exhibit 1B, pp. 11 and 14), he also expected that more hogs would be passed (Exhibit 1B, pp. 9, 13–14; 2B, pp. 21 and 23; 3B, p. 29), that the production line would be shut down less frequently (Exhibit 1B, pp. 14, 15–18 [falsify time sheets so that inspectors would have less inducement to stop the line for the purpose of earning overtime pay]; 2B, p. 21; 3B, pp. 30–31), and that Reed would attempt to control an overzealous inspector (Exhibit 3B, pp. 29–31, 35).

On October 18, 1978, the Administrator of the USDA Meat and Poultry Program filed a complaint before the Secretary of Agriculture alleging reason to believe that Utica Packing Company is unfit to engage in any business requiring inspection under Title I of the Federal Meat Inspection Act (21 U.S.C. § 601 et seq.) because David Fenster (President and Stockholder) had been convicted in the above-described criminal proceedings:

> . . . of four felonies for corruptly having directly and indirectly given things of value to a public official, to wit, a Veterinarian Inspector of the USDA, with intent to influence said person concerning decisions and actions on questions in matters pending before him in his official capacity in respect to the quality of meat inspection within the respondent's plant
>
> . . . .

The complaint further alleged that, on the basis of the stated facts, respondent Utica was unfit to engage in any business requiring inspection, within the meaning of 21 U.S.C. § 671. It further notified Utica of its right to file a response within 20 days; requested oral hearing in conformity with the cited Act, and requested that an order withdrawing inspection services from respondent be issued by the Secretary.

The statute pursuant to which that complaint was filed and pursuant to which the administrative decision was made which is here under review, 21 U.S.C. § 671, provides as follows:

> The Secretary may (for such period, or indefinitely, as he deems necessary to effectuate the purposes of the Act) refuse to provide, or withdraw, inspection services under Title I of this Act with respect to any establishment if he determines, after opportunity for hearing is accorded to the applicant for, or recipient of, such service, that such applicant or recipient is unfit to engage in any business requiring inspection under Title I because the applicant or recipient, or anyone responsibly connected with the applicant or recipient, has been convicted in any Federal or State Court of (1) any felony, or (2) more than one violation of any law, other than a felony, based upon acquiring, handling or distributing of unwholesome, mislabeled, or deceptively packaged food or upon fraud in connection with transactions in food. This section shall not affect in any way other provisions of this Act for withdrawal of inspection services under Title I from establishments failing to maintain sanitary conditions or to destroy condemned carcasses, parts, meat or meat food products.
>
> For the purpose of this section a person shall be deemed to be responsibly connected with the business if he was a partner, officer, director, holder, or owner of 10 per centum or more of its voting stock or employee in a managerial or executive capacity.

 Plaintiffs first argue that the Administrative complaint quoted, *supra* was inadequate under the statute, *supra*, in failing to allege a necessity to terminate plaintiffs' inspection services to insure that unwholesome meats are not introduced into the stream of commerce, which is undisputedly the purpose of the law. Second, plaintiffs argue the inadequacy of the complaint in providing sufficient notice to plaintiffs of

the charges against them to meet the minimal requirements of due process of law. This court must reject both arguments. First, the complaint alleges reason to believe the existence of every fact made relevant to the withdrawal of inspection services by 21 U.S.C. § 671. There is no necessity for it also to allege grounds for withdrawal pursuant to other sections which Congress explicitly declared to be independent and irrelevant, in the body of this enactment itself. Those sections include 21 U.S.C. § 604, § 606, and 9 CFR § 305.5(a) ·(1979); and this court notes that the plain language of § 671 is that this section "shall not affect in any way" the "other provisions" for failure to maintain sanitary conditions. Congress intended to add new and different grounds for withdrawal of inspection under this section, and in doing so to explicitly limit the scope of ensuing administrative considerations to questions of unfitness arising from criminal convictions and no others. The complaint also provides more than adequate notice to meet the requirements of due process of law.

The Administrative Law Judge of the USDA held an evidentiary hearing on the complaint for 7 days commencing June 5, 1979 and after post-hearing briefs were filed, issued his decision and Order on February 11, 1980, concluding, after analysis of relevant facts and law, that Utica was unfit to engage in a business requiring federal meat inspection services because of David Fenster's felony bribery convictions, and that inspection services must be withdrawn unless Utica terminated all association with Mr. Fenster within certain specified time limitations.

The decision of the Administrative Law Judge (hereafter ALJ) was appealed by plaintiffs to the Secretary of Agriculture and on June 25, 1981, the decision and order of USDA Judicial Officer Donald Campbell was filed, affirming the ALJ. It is from that decision that plaintiffs have sought this court's relief.

The standard of review to be applied by this court to the determination of the Secretary of Agriculture is set out at the Administrative Procedure Act, 5 U.S.C. § 706, which provides in pertinent part:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall— .
(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

A. Arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,

B. Contrary to constitutional right, power, privilege, or immunity;

C. In excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

D. Without observance of procedure required by law;

E. Unsupported by substantial evidence in a case ( ___ ) reviewed on the record of an agency hearing provided by statute;

\* \* \* \* \* \*

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

In the instant case, we are instructed by 21 U.S.C. § 671 that "Judicial Review of any such order shall be upon the record upon which the determination and order are based."

In *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1970), reviewing courts are further instructed that, to make a finding under Section (2)(A) above:

... the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.

\* \* \* \* \* \*

Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The

court is not empowered to substitute its judgment for that of the agency. [401 U.S. at 416, 91 S.Ct. at 823]

The "substantial evidence" rule of 5 U.S.C. § 706(2)(E), quoted above, was illuminated by the Supreme Court in *Universal Camera v. National Labor Relations Board*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), as follows:

[S]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126. Accordingly, it must do more than create a suspicion of the existence of the fact to be established.

\* \* \* \* \* \*

... it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. *National Labor Relations Board v. Columbian Enameling and Stamping Co.*, 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660. (340 U.S. at 477, 71 S.Ct. at 459).

In *Bowman Transportation v. Arkansas-Best Freight*, 419 U.S 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974), the Supreme Court further noted that inasmuch as the above-quoted standards A and E of the APA are separate and distinct, an agency decision may be supported by substantial evidence but nevertheless be arbitrary and capricious. The agency under review must, therefore, have articulated a rational connection between the facts found and the choice made. While the court may not supply a reasoned basis for the agency's action that the agency itself has not given, "we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." (Id., 419 U.S. at 286, 95 S.Ct. at 442).

The purpose and policy of the Federal Meat Inspection Act are declared by Congress at 21 U.S.C. § 602:

Meat and meat food products are an important source of the Nation's total supply of food. They are consumed throughout the Nation and the major portion thereof moves in interstate or foreign commerce. It is essential in the public interest that the health and welfare of consumers be protected by assuring that meat and meat food products distributed to them are wholesome, not adulterated, and properly marked, labeled, and packaged. Unwholesome, adulterated, or misbranded meat or meat food products impair the effective regulations of meat and meat food products in interstate or foreign commerce, are injurious to the public welfare, destroy markets for wholesome, not adulterated, and properly labeled and packaged meat and meat food products, and results in sundry losses to livestock producers and processors of meat and meat food products, as well as injury to consumers. The unwholesome, adulterated, mislabeled, or deceptively packaged articles can be sold at lower prices and compete unfairly with the wholesome, not adulterated, and properly labeled and packaged articles, to the detriment of consumers and the public generally. It is hereby found that all articles and animals which are regulated under this Act [21 USCS §§ 601–624, 641–645, 661, 671–680] are either in interstate or foreign commerce or substantially affect such commerce, and that regulation by the Secretary and cooperation by the States and other jurisdictions as contemplated by this Act [21 USCS §§ 601–624, 641–645, 661, 671–680] are appropriate to prevent and eliminate burdens upon such commerce, to effectively regulate such commerce and to protect the health and welfare of consumers.

After review of the whole record, and application of all of the above-described appropriate standards of review to the decision of the Secretary of Agriculture in this matter, this court finds that they have in every instance been met. It accordingly affirms the decision of the Secretary's Judicial Officer and orders entry of summary judgment for defendants herein. Plain-

tiffs' claims of error are discussed, seriatim, below.

■ In Arguments I and II of their brief, plaintiffs argue that the Secretary is authorized to withdraw inspection services under 21 U.S.C. § 671 only when the evidence "establishes," and a finding is made, that such withdrawal is necessary to effectuate the purposes of the Chapter; and further that the specific requisite finding would be that unwholesome meat would otherwise be sold by plaintiffs in this case. This argument devolves from plaintiffs strained reading of the opening language of § 671 that: "The Secretary may (*for such period, or indefinitely, as he deems necessary to effectuate the purposes of the Act*) refuse to provide, or withdraw, inspection services...." This argument also constituted one facet of plaintiffs claim against the adequacy of the administrative complaint. It must fail because it is a twisted and improper construction of plain statutory language; because Congress clearly enacted § 671 on the basis of a *congressional* finding that participation of persons convicted of certain crimes in the program created an unwanted risk of the introduction of unwholesome meats into commerce, in violation of the above-quoted congressional purpose; and because the Judicial Officer did in fact make the finding required by section § 671 that "In view of the serious nature of the felony conviction in this case, which strikes at the heart of the integrity of the federal meat inspection program, an *indefinite withdrawal* of inspection service is appropriate to protect the public health, unless Mr. Fenster is disassociated from respondent." [p. 22, Judicial Officer's Decision.] That finding is supported by substantial evidence on the whole record, in accordance with the above-discussed law, and need not be based upon "established" facts as plaintiffs argue here. It is also a reasoned and non-arbitrary exercise of the Secretary's discretion on duration of a suspension. It articulates a rational connection between the facts found and the choice made, in accordance with *Bowman, supra.*

The parenthetical phrase on which plaintiffs rely in these arguments instructs the Secretary to determine "such period ... as he deems necessary to effectuate the policies of the act" only in his decision on the duration of suspension to be imposed. That is what has been done in this case. As this court discussed, *supra,* concerning the adequacy of the complaint herein, Congress has specifically removed from this conviction-suspension section any necessity to find those facts relevant to those other sections pertaining to the wholesomeness of a participant's meat product. The Secretary need not re-establish the need for the law itself in every case heard, with findings that a person suspendable under § 671 also currently sells unwholesome meats and is therefore suspendable under other sections. Such an interpretation would render § 671 a nullity. In enacting § 671 Congress has declared that, in order to effectuate the purposes declared in the above-quoted preamble, there are two types of criminal convictions which render a program participant unfit to continue in the industry; any felony, or two lesser crimes undermining the national interest in wholesome, unadulterated foods. Implicit is the congressional finding that the likelihood of such persons introducing unwholesome meats into commerce in the future is unacceptably strong, *regardless* of the quality of their meats at the time of the adjudication.

So the purpose of the hearing accorded the participant under § 671 is (1) to determine the actuality of a conviction and the status of the person convicted as a participant in the program or responsibly connected therewith; (2) to ascertain the elements of the crimes, if not felonies, and whether they are such as the statute describes as rendering a participant unfit; (3) to establish the duration of suspension necessary to effectuate the purposes of the act. On the issue of duration the elements of the felony committed are also relevant to a determination of what is necessary to effectuate the act. None of the issues to be heard or decided under § 671 make relevant plaintiffs' arguments, or evidence, that the hogs now being sold are wholesome. Congress

has stated that this section shall have no effect on any other provisions for withdrawal of services based upon unwholesomeness.

■ The convictions on which this proceeding was initiated were four felony counts, each of which constituted an attempt to subvert the purposes of the act and facilitate the sale of at least arguably unwholesome food. Therefore, plaintiffs were plainly suspendable by *both* of the standards set out in § 671. The order of indefinite suspension, accordingly, cannot be said to be arbitrary, capricious, or an abuse of discretion. Indeed, the order has been carefully tailored to minimize its economic impact on Utica, either by the sale of Fenster's stock (over the duration of a year) or his withdrawal from active participation (after 90 days).

Plaintiffs' Argument III is that the decision below was not "based upon the whole record and supported by reliable, probative, and substantial evidence." Again, plaintiffs' argument strains the law. The court has set out the applicable standards of review above: and it finds that the decisions below are based upon substantial evidence, as defined by the case law, on the whole record.

■ Of the evidence on which the Administrative decision was based, plaintiffs argue first that the Memorandum Opinion of the Honorable Philip Pratt in the *United States v. Fenster, supra*, was incompetent "hearsay." This court rejects that argument and further finds that if it were accepted, arguendo, the error would have been harmless beyond reasonable doubt. The Opinion is not hearsay. It is a public record of this United States District Court, and was filed in proceedings in which Mr. Fenster had at least the same right and interest in cross-examination and presentation of evidence as he did in the administrative proceedings here in issue. Moreover, the burden of proof beyond reasonable doubt which the government met, in establishing the facts found there, was far greater than was its burden here to present adequate evidence to withstand the direction of a verdict, or "substantial" evidence. Moreover, had only the guilty verdict of a jury been presented in these administrative proceedings, it would have still constituted a finding of every element of the felony charged, on four counts, and would have been susceptible to the same analysis. Finally, plaintiffs argue that an independent evaluation of the transcripts of the recordings used to convict Fenster somehow disproves the element of *corrupt purpose* to undermine the meat inspection program on which the convictions were based and the Administrators have relied to order an indefinite suspension. This court has evaluated those transcripts, and this court fully concurs in Judge Pratt's above-quoted analysis of what they show. The transcripts themselves constitute substantial evidence that the indefinite suspension order is proper. They include not only Fenster's repeated requests for inspection leniency in return for cash paid, but also suggestions that the Veterinarian falsify the time sheets of his supervisees to provide them with unearned overtime and thereby soften their acuity, and repeated assertions that the Veterinarian's expressed reluctance and fears about accepting bribes were only a function of his youth, which he would presumably outgrow in time. They include not one whit or scintilla of a suggestion that Fenster was driven to make these payments, as plaintiffs now argue, by the anti-Semitic harassment of the inspection team. Even if the Administrator had been obliged by § 671 to make a finding that there was a likelihood of Fenster's introduction of unwholesome meat into commerce through Utica if not suspended, which finding is not required under that section, these transcripts are substantial evidence of that likelihood.

■ The Administrative Decisions also rely upon the testimony of Dr. Robert Gonter, the Director of the Evaluation and Enforcement Branch of the Compliance Division of the Food Safety and Quality Services of the Department of Agriculture. Plaintiffs attack his testimony as hearsay and uncorroborated personal opinion, and

make much of his never having visited the premises of plaintiffs' plant. It is on Gonter's initial recommendation that all administrative suspension proceedings under § 671, nationally, are initiated. He is cognizable as an expert in this area. His expert opinion was that inasmuch as the meat inspection service must rely considerably upon the integrity of plant management in effectuating the meat inspection program, he sought suspension in this case and it has become departmental policy to seek suspension in all cases of convictions involving bribery of federal meat inspection personnel. This court can attach no significance to the fact that Gonter never visited plaintiffs' plant. He testified that "I determined in my opinion that Utica Packing Company is unfit for inspection because of the convictions of the responsibly connected official, David Fenster." (Tr. p. 82, June 5, 1979). This suspension was totally unrelated to current plant conditions, as discussed *supra*. Also, plaintiffs' argument that some cases initiated under § 671 have been resolved by settlements short of indefinite suspension holds no water. Indeed, in this case there will be no suspension of inspection services if Fenster is disassociated from Utica.

 The ALJ had discretion, as the trier of fact, to attach such weight and credibility to the testimony of plaintiffs' witnesses as he found proper, insofar as that testimony was competent or relevant. It must be remembered, too, that there need be only substantial evidence, not necessarily a *preponderance* of the evidence, to support the findings made. Much of plaintiffs' evidence at the Administrative level constituted an attempt to mitigate or impeach the significance of Fenster's bribery convictions, or was related to the alleged current wholesomeness of plaintiffs' plant and the meats processed therein. To that extent it was irrelevant and immaterial, under § 671. Plaintiffs rely heavily upon their psychiatric testimony, and argument, that Fenster's experience as a Polish Jew through the Nazi Holocaust established a historically recognized pattern of survival through bribery to which he reverted when

placed under extreme stress by poor health and the perceived anti-Semitic oppression of meat inspectors of the United States government. That argument, if credited, would only further establish the propriety of Fenster's suspension from the meat inspection program. It was properly accorded *no* weight or relevance whatsoever by the trier of fact here, however, and this court notes that it is a slander not only on the Jewish survivors of the Holocaust but on this country, to which Fenster immigrated and in which he has built an enterprise which his economist testified is worth $200 million to his community; in which this record indicates that he has had access to every level of the United States Department of Agriculture including the Secretary of Agriculture to discuss his difficulties in the Meat Inspection Program; in which a United States Senator has sworn to his high character, as have the aides of two State Senators (one of whom is now his employee) and a bank President. Plaintiffs' arguments that Fenster's bribes were futile in effectuating the sale of unwholesome meats are similarly self-defeating, and irrelevant as well. The evidence of probable economic loss to this community if Utica were to close is also, although unfortunate, irrelevant. That argument also reflects plaintiffs' continued adherence to the mentality which led to an offer of cash to a United States Veterinarian, in the first place. It is a refusal to acknowledge the declaration of our federal government, through Congress, that our interest in wholesome meats as a nation is superior to our economic interests, as individuals. All of plaintiffs' evidence taken together, including his character evidence, if considered relevant, is insufficient to render *insubstantial* the evidence on which the Secretary has based his rational decision that a suspension of Utica of indefinite duration is proper under § 671 if Fenster retains any responsible connection with the firm.

 Plaintiffs' Argument VI is that the Administrative Decisions below, do not rule specifically on each of plaintiffs' proposed findings of fact and law, and must there-

fore be set aside by this court pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2). Plaintiffs claim a violation of 5 U.S.C. § 557(c) which provides that "... the parties are entitled to a reasonable opportunity to submit for the consideration of the employees participating in the decision (1) proposed findings and conclusions." Clearly, although the law requires the giving of an opportunity to submit proposals, the law does not require that an administrative decision consist of particularized rulings on all proposed findings of fact and law submitted by all participants. The requirements of an administrative decision are clearly enumerated at 5 U.S.C. § 706; and the reviewing court has been directed by *Overton Park, supra*, in simple language, to consider "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." The decisions herein have met both standards. They reflect full consideration of all relevant factors, and plaintiffs are not entitled to demand fact-finding on irrelevancies. *NLRB v. Sharples Chemicals*, 209 F.2d 645 (CA 6, 1954). The sound judgment has been drawn from those factors considered, on the whole record, that statutory unfitness has been demonstrated. Accordingly, all of plaintiffs' proposed conclusions to the contrary have been rejected. *State of California v. FPC*, 345 F.2d 917 (CA 9, 1965), cert. den. 382 U.S. 941, 86 S.Ct. 394, 15 L.Ed.2d 351 (1965). Plaintiffs particularly insist that the decisions must fail for lack of specific findings as to whether the conduct of the meat inspectors subordinate to the bribed veterinarian was or was not in fact anti-Semitic conduct. In proceedings pursuant to 21 U.S.C. § 671, that fact is an irrelevancy. Moreover, if it were arguendo considered relevant, the claim accepted, and weighed on the whole record of this case (including plaintiffs' own evidence of Fenster's recourse to far higher levels of the United States and State of Michigan governments) it detracts nothing from the substantiality of the evidence against plaintiffs.

■ Plaintiffs' final argument is that they were denied due process of law at the administrative level because of the "continually changing and shifting theories of law" on which the Department was proceeding. It appears that, at the inception of these administrative proceedings, the ALJ advised the parties that, in accordance with an earlier Judicial Officer's Opinion, *In Re Norwich Beef Company*, 38 Ag.Dec. 380 (1970), he would hear plaintiffs' evidence of the circumstances surrounding Fenster's felony convictions and his present reputation in the community. Accordingly, plaintiffs presented such evidence, which has been discussed *supra*. In his subsequent decision however, the ALJ noted plaintiffs' mitigation and character evidence and concluded that surrounding circumstances were not relevant, where the very nature of the felony conviction itself was so directly antithetical to the integrity of the program and the purposes of the act. [Appendix P. 127]. The Judicial Officer wrote, on this point:

> In view of the type of felony involved in the present case, there is no need to consider any other circumstances in order to determine whether the conviction of this felony renders respondent unfit to receive inspection services.

> It would similarly be inappropriate to consider whether it is likely that Mr. Fenster will again attempt to bribe a meat inspector. [Appendix p. 152].

The Judicial Officer thereafter likened plaintiffs' evidence and arguments to a request for a "second chance," and noted that:

> It is a rare case where the violator cannot produce some witnesses who regard his reputation as good irrespective of the violation. It is a rare case where the violator would not appear to be truly sorry for his misconduct and indicate that the violation will never again be committed. (Appendix p. 154).

This court first notes that plaintiffs were not prejudiced by the ALJ's permitting them to introduce evidence and argue theories which were later determined to be irrelevant or incompetent. Full and fair opportunity to present their case was provid-

ed, and there is no claim of the exclusion of any evidence which plaintiffs felt was pertinent to their presentation on the record below. This court further finds no abuse of discretion in the ensuing determinations that plaintiffs' evidence in impeachment or mitigation of the convictions was irrelevant or immaterial; and indeed this court has made that same finding, in evaluating the substantiality of the evidence which supports the administrative conclusion, *supra*. Similarly, the evidence which plaintiffs presented on Fenster's present reputation and Utica's present plant conditions, is equally irrelevant to the application of the conviction-suspension provision of § 671: and if it were considered relevant it would not render insubstantial that evidence which supports the decision made. That is the essence of the above-quoted rumination of the Judicial Officer on the weight to be accorded the testimony of character witnesses in such cases.

Accordingly, inasmuch as the Administrative decision under appeal is supported by substantial evidence on the whole record; is based upon a consideration of the relevant factors and demonstrates no clear error of judgment, abuse of discretion, arbitrariness, or capriciousness, summary judgment will enter for defendants affirming the final decision of the Secretary of Agriculture.

IT IS SO ORDERED.