**UTICA PACKING COMPANY and David Fenster, Plaintiffs-Appellants,**

v.

**John R. BLOCK, Secretary, United States Department of Agriculture, et al., Defendants-Appellees.**

No. 85–1324.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 2, 1985.

Decided Jan. 13, 1986.

James L. Quarles, III (argued), Hale and Dorr, Washington, D.C., Geoffrey S. Stewart, for plaintiffs-appellants.

L. Michael Wicks, Asst. U.S. Atty. (argued), Detroit, Mich., for defendants-appellees.

Before LIVELY, Chief Judge, and CONTIE and WELLFORD, Circuit Judges.

LIVELY, Chief Judge.

The question in this case is whether the Secretary of Agriculture may replace the Judicial Officer of the Department of Agriculture (hereafter USDA) after that officer has rendered a final decision in a case and then present a petition for reconsideration to the replacement. The district court found no legal impediment to this course of conduct, and affirmed the decision rendered by the second Judicial Officer. We disagree and reverse.

## THE ADMINISTRATIVE SETTING

In 1940 Congress passed the Schwellenbach Act, 54 Stat. 81 (1940), now codified as 7 U.S.C. § 450c–450g (1982). This law authorized the Secretary of Agriculture (Secretary) to delegate his regulatory functions. Pursuant to this authority the Secretary established the position of Judicial Officer. "The Judicial Officer acts as the final deciding officer in lieu of the Secretary in Department administrative proceedings involving adjudicating or rate-making where the statute requires an administrative hearing or opportunity therefor." T. Flavin, *The Functions of the Judicial Officer, United States Department of Agri-culture,* 26 Geo.Wash.L.Rev. 277 (1957–58) (footnote omitted). The delegation to the Judicial Officer as final deciding officer in adjudication proceedings is contained in 7 C.F.R. § 2.35 (1985).

The Federal Meat Inspection Act, 21 U.S.C. §§ 601, et seq. (1982), requires that all meat food products moving in or affecting commerce be "prepared," labeled and marked only as permitted by the statute and regulations and that inspectors be appointed for the purpose of enforcing these requirements. Section 401 of the Meat Inspection Act, 21 U.S.C. § 671, empowers the Secretary to remove a person or firm deemed unfit to deal with meat food products by withdrawing the inspection service:

The Secretary may (for such period, or indefinitely, as he deems necessary to effectuate the purposes of this chapter) refuse to provide, or withdraw, inspection service under subchapter I of this chapter with respect to any establishment if he determines, after opportunity for a hearing is accorded to the applicant for, or recipient of, such service, that such applicant or recipient is unfit to engage in any business requiring inspection under subchapter I because the applicant or recipient, or anyone responsibly connected with the applicant or recipient, has been convicted, in any Federal or State court, of (1) any felony, or (2) more than one violation of any law, other than a felony, based upon the acquiring, handling, or distributing of unwholesome, mislabeled, or deceptively packaged food or upon fraud in connection with transactions in food. This section shall not affect in any way other provisions of this chapter for withdrawal of inspection services under subchapter I from establishments failing to maintain sanitary conditions or to destroy condemned carcasses, parts, meat or meat food products.

For the purpose of this section a person shall be deemed to be responsibly connected with the business if he was a partner, officer, director, holder, or owner of 10 per centum or more of its voting

stock or employee in a managerial or executive capacity.

The determination and order of the Secretary with respect thereto under this section shall be final and conclusive unless the affected applicant for, or recipient of, inspection service files application for judicial review within thirty days after the effective date of such order in the appropriate court as provided in section 674 of this title. Judicial review of any such order shall be upon the record upon which the determination and order are based.

The Secretary has promulgated rules of practice governing formal adjudicatory proceedings under various statutes, including the Meat Inspection Act. 7 C.F.R. § 1.130, et seq. (1985). When an administrator of an agency within the USDA files a complaint with the Secretary the matter is referred to an administrative law judge (ALJ). Upon request the party complained against is entitled to a hearing before the ALJ. The decision of the ALJ is final unless there is a timely appeal to the Judicial Officer, who decides the appeal on the administrative record. The Judicial Officer may grant oral argument or accept submission on briefs. The Judicial Officer renders a decision under procedures set forth in 7 C.F.R. § 1.145(i):

(i) *Decision of the Judicial Officer on Appeal.* As soon as practicable after the receipt of the record from the Hearing Clerk, or, in case oral argument was had, as soon as practicable thereafter, the Judicial Officer, upon the basis of and after due consideration of the record and any matter of which official notice is taken, shall rule on the appeal. If the Judicial Officer decides that no change or modification of the Judge's decision is warranted, the Judicial Officer may adopt the Judge's decision as the final order in the proceeding, preserving any right of the party bringing the appeal to seek judicial

review of such decision in the proper forum. A final order issued by the Judicial Officer shall be filed with the Hearing Clerk. Such order may be regarded by the respondent as final for purposes of judicial review without filing a petition for rehearing, reargument, or reconsideration of the decision of the Judicial Officer.

The regulations further provide that if reconsideration is sought a petition to reconsider the decision of the Judicial Officer shall be filed within 10 days after service of the decision. 7 C.F.R. § 1.146(a)(3).

### I.

### A.

In 1978 David Fenster, president and part owner of Utica Packing Company was convicted of bribing a meat inspector. After a hearing on a complaint filed by USDA the ALJ ordered withdrawal of meat inspection services from Utica unless Fenster divested himself of his holdings in the company and withdrew from management. Fenster appealed the decision and the Judicial Officer, Donald Campbell, affirmed the finding of the ALJ that Utica was unfit to receive inspection services because a responsibly connected person had been convicted of a felony which went to the heart of the inspection program. The Judicial Officer found Fenster's argument for leniency based on mitigating circumstances irrelevant and declined to consider any other circumstances in view of the type of felony involved. The effect of withdrawing inspection was to debar Utica from engaging in the meat products business so long as Fenster was associated with the company.

Fenster and Utica filed a complaint in the United States District Court for the Eastern District of Michigan pursuant to 21 U.S.C. § 674,[1] seeking review of the final

---

1. 21 U.S.C. § 674 provides:

> The United States district courts, the District Court of Guam, the District Court of the Virgin Islands, the highest court of American Samoa, and the United States courts of the

other Territories, are vested with jurisdiction specifically to enforce, and to prevent and restrain violations of, this chapter, and shall have jurisdiction in all other kinds of cases

decision of the Judicial Officer. After reviewing the administrative record the district court granted summary judgment affirming the decision. *Utica Packing Co. v. Bergland,* 511 F.Supp. 655 (E.D.Mich.1981). On appeal this court found that the Judicial Officer erred in refusing to consider mitigating circumstances. The case was remanded "to afford the Judicial Officer an opportunity to consider the mitigating circumstances advanced by Fenster." *Utica Packing Co. v. Bergland,* 705 F.2d 460 (6th Cir.1982) (Table).

Upon remand Judicial Officer Campbell expressed strong disagreement with the decision of this court, stating *"any* person who is convicted under 18 U.S.C. § 201(b) of corruptly bribing a Federal meat inspector is unfit to receive Federal inspection regardless of *any* mitigating circumstances." *In re Utica Packing Company,* FMIA Docket No. 35, Decision at 27 (Nov. 18, 1982) (emphasis in original). Because he was required to do so by this court's decision, Campbell did review the evidence of mitigating circumstances which included: possible improper conduct by the inspectors; virulent anti-Semitic remarks by one of the inspectors (Fenster is a Jewish survivor of the Holocaust); Fenster's serious health problems at the time of the bribery; evidence that despite the bribery, Fenster wanted to operate a clean plant; and the Judicial Officer's finding that the bribery stemmed partly from a misunderstanding.

As he reviewed each of the mitigating circumstances Judicial Officer Campbell stated in his decision that, except for this court's decision, he would "give no weight to this circumstance." Nevertheless, Campbell concluded:

> If mitigating circumstances must be considered, I cannot reasonably imagine any stronger mitigating circumstances than appear here. If any felon convicted under 18 U.S.C. § 201(b) of bribing a meat inspector is fit to receive Federal meat inspection, then David Fenster is fit.…

arising under this chapter, except as provided

*Id.* at 28. The Judicial Officer ordered the complaint dismissed "with great reluctance and misgiving." *Id.* at 29.

**B.**

Since the Judicial Officer acts for the Secretary, the only post-decision proceeding open to the USDA is a petition to the Judicial Officer for reconsideration. Several USDA officials met shortly after receiving Campbell's second opinion to consider what options might be available. As the brief of the Secretary in this court states, the USDA "violently disagreed" with the latest decision of the Judicial Officer and had "little hope of reconsideration." Instead of petitioning for reconsideration immediately, these officials obtained the Secretary's agreement to revoke Campbell's authority to perform any further "regulatory function" in the Utica case and to "vest such authority in Deputy Assistant Secretary John J. Franke, Jr." Appellee's Brief at 8–9. Mr. Franke is not a lawyer and had never performed adjudicatory, regulatory or legal work. Richard Davis, an attorney in the Office of General Counsel of USDA, was assigned to assist Franke. Davis had no previous contact with the Utica case, but his immediate supervisor participated in the removal of Campbell and appointment of Franke, and also supervised the division responsible for the prosecution of Utica.

Late in the afternoon of the tenth day after Campbell's decision the Secretary filed a petition for reconsideration with Franke. After denying Utica's motion to strike the notice of revocation and redelegation the new Judicial Officer granted the motion for reconsideration. Franke found that "despite the mitigating circumstances presented by respondent, respondent is unfit to receive federal meat inspection so long as David Fenster is associated with the plant." He then ordered inspection service withdrawn indefinitely until Fenster should sever all association with Utica. Utica and Fenster again sought review in the district court, and the district court

in section 607(e) of this title.

again granted summary judgment in favor of the Secretary. This appeal followed.

## II.

### A.

There are additional facts that should be stated before we undertake a consideration of the legal issues raised by the parties. The USDA officials who made the decision to replace Campbell were Dr. Houston, Administrator of Food Safety and Inspection Services, the client agency of the prosecution; James Barnes, USDA General Counsel; James Kelly, an Associate General Counsel who actually participated in supervision of the Utica case at the time the revocation and redelegation took place and was the supervisor of Richard Davis; and Harold Reuben of the Office of General Counsel who also participated in supervision of the prosecution. The Secretary was out of Washington and did not have information available to make an independent decision. He accepted the recommendation of the others and signed the revocation and redelegation order.

In response to requests for admission the Secretary judicially admitted that "[o]ne of the purposes of appointing a 'second Judicial Officer' was to improve the Department's chances of winning a petition for reconsideration."

### B.

Utica and Fenster have presented a number of arguments for reversal, two of which require our consideration. In the first place, they contend that the actions of USDA violated the Administrative Procedure Act, particularly 5 U.S.C. § 554(d), which provides in relevant part:

> An employee or agent engaged in the performance of investigative or prosecuting functions for an agency in a case may not, in that or a factually related case, participate or advise in the decision, recommended decision, or agency review pursuant to section 557 of this title, except as witness or counsel in public proceedings.

The plaintiffs admit that Franke performed no investigative or prosecuting functions in the Utica case. They argue, however, that the selection of Franke and Davis by officials who were involved in the prosecution of the case violated the prohibition against prosecutors participating or advising in the decision of the second Judicial Officer. The Secretary counters that there was no violation of § 554(d) since neither Franke nor Davis had prior contact with the Utica case and no prosecutor or investigator participated as a judge.

The second basis for reversal urged by the plaintiffs is that the procedures followed by USDA in this case violated the due process guarantee of the Fifth Amendment. They assert that fundamental fairness was sacrificed to gain a desired decision from a hand-picked judge and that all appearance of fairness was "shattered." The plaintiffs point out that Campbell was a career employee who was protected under the merit system and thus immune to departmental pressures (though he had no tenure in the position of Judicial Officer), whereas Franke, a political appointee, had no job protection and could be fired at will. In addition, they contend, the appointment of Davis, a subordinate of Kelly, guaranteed that the group who chose the "option" of revocation and redelegation would have strong influence over the decision on reconsideration.

The Secretary responds that there is a presumption of honesty and integrity on the part of responsible officers and that the plaintiffs produced no evidence of any improprieties by Franke or Davis. He argues that the supervision of agency adjudicators by prosecutorial officers has been upheld and that criminal cases involving blending of prosecutorial and judicial functions are not controlling in administrative settings.

## III.

### A.

Neither the court nor the parties have found a case with facts similar to those established by this record. This may be

because very few federal agencies and departments have a position like the USDA Judicial Officer. He acts as delegee of the Secretary who appears to have total discretion in selecting and appointing the person to fill the position. While admitting that one of the reasons for removing Campbell and appointing Franke was to improve the chances of USDA on reconsideration, the Secretary asserts that the primary reason was that Campbell so "grossly misinterpreted" this court's decision ordering a remand that he was incapable of exercising an objective review. Reduced to its essence this is a claim that the Secretary's delegation can be withdrawn before reconsideration any time he disagrees with the Judicial Officer's conclusions. Yet discovery in this case disclosed that Judicial Officers had made hundreds of decisions since 1940, and none had ever had his delegation revoked on this ground. If the Judicial Officer is to have stature as an independent decision-maker, this argument of the Secretary cannot be accepted.

### B.

The actions of USDA in this case do not appear to have violated APA § 554(d). The clear purpose of this section is to separate the investigative and prosecutorial functions from the adjudicative function. *Wong Yang Sung v. McGrath*, 339 U.S. 33, 41, 70 S.Ct. 445, 450, 94 L.Ed. 616, *modified*, 339 U.S. 908, 70 S.Ct. 564, 94 L.Ed. 1336 (1950). We do not accept the Secretary's position that § 554(d) is to be read so narrowly that it applies only to cases where the same person acts as prosecutor or investigator and judge. However, so far as this record shows neither Franke nor Davis had any prior contact with the Utica case, and there was no showing that anyone in USDA actually influenced the decision on reconsideration. Nor was there any showing that either Franke or Davis was acquainted with *ex parte* information about the case. By regulation USDA has specifically prohibited *ex parte* communications between investigators or prosecutors and the Judicial Officer:

(a) At no stage of the proceeding between its institution and the issuance of the final decision shall the Judge or Judicial Officer discuss ex parte the merits of the proceeding with any person who is connected with the proceeding in an advocative or in an investigative capacity, or with any representative of such person: *Provided*, That procedural matters shall not be included within this limitation; and *Provided further*, That the Judge or Judicial Officer may discuss the merits of the case with such a person if all parties to the proceeding, or their attorneys have been given notice and an opportunity to participate. A memorandum of any such discussion shall be included in the record.

7 CFR § 1.151(a).

In *Grolier Inc. v. Federal Trade Commission*, 615 F.2d 1215, 1220 (9th Cir.1980), the court stated the intention of Congress in adopting § 554(d) as follows:

We conclude that by forbidding adjudication by persons "engaged in the performance of investigative or prosecuting functions," Congress intended to preclude from decisionmaking in a particular case not only individuals with the title of "investigator" or "prosecutor," but all persons who had, in that or a factually related case, been involved with *ex parte* information, or who had developed, by prior involvement with the case, a "will to win."

The focus under § 554(d) is on the past involvement of the adjudicator. Under the peculiar facts of this case we include both Franke and Davis within the term "adjudicator" or "judge" because of Franke's obvious reliance on Davis in all matters legal. In order for § 554(d) to cause disqualification where the adjudicator was not actually a prosecutor or investigator in the case or a factually related one, the person challenging his right to adjudicate has the burden of showing that some past involvement has acquainted him with *ex parte* information or engendered in him an unjudgelike "will to win." *Id.* at 1221. Though the "redelegation" of Franke as

Judicial Officer was invalid for other reasons, the plaintiffs did not make this showing and we do not believe the move violated the Administrative Procedure Act.

## IV.

### A.

The Secretary does not quarrel with the indisputable fact that Anglo-American law does not permit anyone to be the judge of his own case. At least since Lord Coke's decision in *Dr. Bonham's Case*, 8 Rep. 114a (C.P.1610), this has been the rule. The Secretary also recognizes that *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), established the principle that it violates due process for a judge to have a direct and substantial interest in the outcome of a case before him. However, the Secretary argues that these principles were not involved in the removal of Campbell and the appointment of Franke, since Franke was not a party and was not shown to have any interest in the outcome of the case.

The Secretary places principal reliance on *Marcello v. Bonds,* 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955), in arguing that the due process rights of Fenster and Utica were not violated in the present case. *Marcello* involved proceedings under § 242(b) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1252(b). The petitioner charged that the proceedings violated due process because they failed to provide for a fair and impartial hearing. The objection was that the special inquiry officer who conducted the deportation proceedings was subject to the supervision and control of officials in the Immigration Service charged with investigative and prosecuting functions. Rejecting this claim, the Court stated:

> The contention is without substance when considered against the long-standing practice in deportation proceedings, judicially approved in numerous decisions in the federal courts, and against the special considerations applicable to deportation which the Congress may take into account in exercising its particularly broad discretion in immigration matters. *Id.* at 311, 75 S.Ct. at 762. *Marcello* appears to be limited to immigration cases.

The Supreme Court affirmed in *Withrow v. Larkin,* 421 U.S. 35, 46, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975), that the due process requirement of a fair trial in a fair tribunal "applies to administrative agencies which adjudicate as well as to courts." (Citation omitted). Nevertheless, the Court distinguished cases where the probability of actual bias is "too high to be constitutionally tolerable" from normal administrative adjudication:

> The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

*Id.* at 47, 95 S.Ct. at 1464.

### B.

There can be no doubt that the requirement of separation of functions is relaxed in administrative adjudication. However, the requirement of a fair trial before a fair tribunal has not been eliminated. *Withrow v. Larkin.* This concept requires the appearance of fairness and the absence of a probability of outside influences on the adjudicator; it does not require proof of actual partiality.

In *Amos Treat & Co. v. Securities and Exchange Commission,* 306 F.2d 260 (D.C. Cir.1962), the court considered a challenge to a former division director of the SEC participating after his appointment as a commissioner in a case in which he had

prior involvement. The dual role of the commissioner was challenged both under the APA and on due process grounds. The decision was based on due process considerations. *Id.* at 267. In attempting to determine the application of due process to administrative adjudications the court quoted *Hannah v. Larche,* 363 U.S. 420, 442, 80 S.Ct. 1502, 1514, 4 L.Ed.2d 1307 (1960):

"Its exact boundaries are undefinable, and its content varies according to specific factual contexts. Thus, when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process."

306 F.2d at 263 (footnote omitted). The court concluded that quasi-judicial proceedings must entail, "at the very least," a fair trial, quoting *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955):

"A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness."

306 F.2d at 263. *Hannah* was a civil rights case and *Murchison* was a criminal case, yet the court turned to them for guidance in determining what process is due in administrative proceedings of a judicial or quasi-judicial nature.

■ We believe this is a case where the plaintiffs have shown the risk of unfairness to be "intolerably high." Every disappointed litigant would doubtless like to replace a judge who in the regular course of his or her duties has decided a case against the litigant and present a motion for a new trial or for reconsideration to a different judge of his own choosing. All notions of judicial impartiality would be abandoned if such a procedure were permitted.

There is no guarantee of fairness when the one who appoints a judge has the power to remove the judge before the end of proceedings for rendering a decision which displeases the appointer. Yet that is exactly what occurred in this case. Campbell was appointed Judicial Officer long before the Utica case arose, and considered the case in the normal course of his duties. When Campbell rendered a decision in the case with which USDA "violently disagreed," officials of the department unceremoniously removed him and presented a petition for reconsideration to their hand-picked replacement.

It is of no consequence for due process purposes that Fenster and Utica were unable to prove actual bias on the part of Franke or Davis. The officials who made the revocation and redelegation decision chose a non-career employee with no background in law or adjudication to replace Campbell. They assigned a legal advisor to the new Judicial Officer who worked under an official who was directly involved in prosecution of the Utica case. Such manipulation of a judicial, or quasi-judicial, system cannot be permitted. The due process clause guarantees as much. As the court stated in *D.C. Federation of Civic Ass'ns v. Volpe,* 459 F.2d 1231, 1246–47 (D.C.Cir.1971), *cert. denied,* 405 U.S. 1030, 92 S.Ct. 1290, 31 L.Ed.2d 489 (1972):

With regard to judicial decisionmaking, whether by court or agency, the appearance of bias or pressure may be no less objectionable than the reality.

### V.

Nothing in this opinion should be perceived as minimizing the seriousness of Fenster's criminal activities. Bribing an inspector does strike at the heart of the meat inspection program and cannot be tolerated. As we wrote in our earlier unpublished opinion in this case:

The more closely the conduct strikes to the policies of the Federal Meat Inspection Act, the more likely it alone will support a determination of unfitness regardless of the mitigating facts present. *See Wyszynski Provision Co., Inc. v. Sec. of Agriculture,* 538 F.Supp. 361, 364 (E.D.Pa.1982).

Judicial Officer Campbell properly concerned himself with the nature of Fenster's criminal activities and the possible harm to the public which could flow from them. It is not certain that Campbell properly construed this court's remand order in considering mitigating circumstances. However, that is not the issue presently before us. Whether the Judicial Officer was correct or incorrect in his application of the law, the Secretary's efforts to change the result by the methods described in this opinion cannot be permitted to succeed.

The judgment of the district court is reversed, and the case is remanded with directions to remand it to the Secretary for re-entry of Judicial Officer Campbell's order dismissing the complaint against Utica and Fenster.