**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GEORGE F. MARSHALL; ONE
MANAGEMENT, INCORPORATED;
FREDERICK INVESTMENT CORPORATION,
Plaintiffs-Appellants,

v.

ANDREW CUOMO, in his official

capacity as Secretary of Housing
and Urban Development; U.S.
DEPARTMENT OF HOUSING & URBAN
DEVELOPMENT; UNITED STATES OF
AMERICA,
Defendants-Appellees.

No. 98-1780

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Malcolm J. Howard, District Judge.
(CA-97-924-5-H2)

Argued: May 6, 1999

Decided: September 23, 1999

Before WILKINSON, Chief Judge, and TRAXLER and KING,
Circuit Judges.

_____

Affirmed by published opinion. Judge Traxler wrote the opinion, in
which Chief Judge Wilkinson and Judge King joined.

_____

**COUNSEL**

**ARGUED:** Kevin Lamar Sink, HOWARD, STALLINGS, STORY,
WYCHE, FROM & HUTSON, P.A., Raleigh, North Carolina, for

Appellants. Eric David Goulian, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Ashley H. Story, HOWARD, STALLINGS, STORY, WYCHE, FROM & HUTSON, P.A., Raleigh, North Carolina, for Appellants. Frank W. Hunger, Assistant Attorney General, Janice McKenzie Cole, United States Attorney, Barbara C. Biddle, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

_____

## OPINION

TRAXLER, Circuit Judge:

Appellants George F. Marshall, One Management, Inc., and Frederick Investment Corporation (collectively "Marshall"), brought a complaint against appellees, the Department of Housing and Urban Development and its Secretary (collectively "HUD"), challenging administrative proceedings which resulted in HUD's imposition of a suspension and three-year debarment of Marshall from future participation in covered transactions with the federal government. See 24 C.F.R. §§ 24.100-.420 (1999). The district court granted HUD's motion for summary judgment as to two counts of Marshall's ten-count complaint and granted HUD's motion to dismiss the remaining eight counts, thereby upholding HUD's decision pursuant to the Administrative Procedures Act ("APA"). See 5 U.S.C.A. §§ 702-706 (West 1996). We affirm.

I.

Section 8 of the United States Housing Act (the"Act") provides for financial assistance to "aid[ ] low-income families in obtaining a decent place to live and [to] promot[e] economically mixed housing." 42 U.S.C.A. § 1437f(a) (West Supp. 1998). Pursuant to the Act, HUD enters into Housing Assistance Payment Contracts ("Section 8 agreements") with private landlords, under which the landlords agree to maintain "decent, safe, and sanitary" housing for low-income tenants in return for HUD's agreement to make rental assistance payments (or subsidies) on behalf of the tenants.**1** If a property owner fails to main-

_____

**1** The "decent, safe, and sanitary" requirement is defined in HUD's Housing Quality Standards, which are incorporated by reference into the

2

tain the subsidized units as required, HUD may abate further rental assistance payments, see 24 C.F.R. § 886.323(e) (1999), and may pursue suspension and debarment proceedings against the owner, 24 C.F.R. §§ 24.305, 24.405. The regulation enumerates the specific grounds for suspension and debarment, including"[a] willful failure to perform in accordance with the terms of one or more public agreements or transactions," 24 C.F.R. § 24.305(b)(1), and the "material violation of a statutory or regulatory provision or program requirement applicable to a public agreement or transaction," 24 C.F.R. § 24.305(f).

This case arises from Section 8 agreements which Marshall entered into with HUD for the provision of subsidized, multifamily housing at South Lawndale Apartments and Whitney Young Apartments in Chicago, Illinois. As owner of the properties, Marshall was required to certify, on a monthly basis, that the subsidized units were in a decent, safe, and sanitary condition. Following HUD inspections of South Lawndale and Whitney Young in March 1997, however, the HUD Assistant Secretary for Housing, acting as the debarring official, see 24 C.F.R. § 24.105, issued a notice of suspension and a proposed five-year debarment, charging that Marshall had violated his Section 8 agreements with HUD by failing to maintain the properties in a decent, safe and sanitary condition.[2] Marshall also received a report rating the physical condition of both properties as"below average," as well as estimates that Whitney Young needed $541,530 in repairs and that South Lawndale needed $106,845 in repairs. In response, Marshall's on-site property manager at Whitney Young submitted a

_____

Section 8 agreements. See 24 C.F.R. § 886.113 (1999); see also 24 C.F.R. §§ 5.701-5.705 (1999).

[2] The notice also charged three additional grounds for the proposed debarment, including the alleged failure to obtain required HUD approval for management changes, the alleged submission of incomplete previous participation certificates, and the alleged submission of misleading previous participation certificates. Having concluded that the failure to maintain the two apartment complexes in a decent, safe, and sanitary condition in violation of the Section 8 agreements was alone sufficient to justify a three-year debarment, the debarring official ultimately made no findings as to these additional grounds.

3

plan to HUD proposing $535,715 in repairs. However, Marshall disagreed with the amount of repairs proposed by both HUD and his property manager, offering instead to use project income (after operating expenses) plus a personal contribution of $100,000 to fund certain repairs.

Although Marshall did effect some repairs to the Chicago properties, HUD ultimately determined that the repairs were insufficient to bring the properties into compliance. Specifically, HUD referenced sagging and uneven flooring; cracked and missing bricks and mortar (evidencing widespread settling and structural damage); seriously deteriorated porches and exterior stairwells creating safety hazards to the residents and children; water damage throughout several of the project buildings from leaking roofs; inoperable doors and door frames creating a security hazard; numerous broken windows and windows lacking adequate insulation from outside elements; and unusable kitchen and bathroom fixtures and appliances (due to age, deterioration from the sagging floors, or water damage). Convinced that the condition of the properties violated both Section 8 agreements, HUD abated subsidy payments in May 1997. Shortly thereafter, Marshall sold the Whitney Young and South Lawndale properties.

By this time, Marshall had responded to the charges set forth in the notice of suspension and debarment. In May 1997, Marshall requested and was granted an immediate hearing on the charges, and a hearing official was appointed to preside. Following a hearing, the debarring official issued the determination challenged in this action.[3] The debarring official concluded that "Marshall ha[d] willfully failed to maintain the [Chicago] projects in decent, safe, and sanitary condition, as required by the [Section 8 agreements] and therefore may be debarred under 24 C.F.R. § 24.305(b)(1),"[4] and that "Marshall's conduct cons-

_____

[3] The debarring official is to render the final decision within 45 days after receipt of the respondent's argument and evidence, or within 15 days after receipt of the findings from the hearing official, unless such period is extended for good cause. See 24 C.F.R. § 24.314(1).

[4] The debarring official further noted in support of this determination that:

> [Marshall's] failure to comply with his contractual obligations continued after HUD notified him of the projects' deficiencies

4

titute[d] a material violation of a program requirement applicable to public agreements, i.e. the [Section 8 agreements]," which independently justified debarment under 24 C.F.R. § 24.305(f). The debarment was for a three-year period.[5]

In addition to challenging the debarring official's determination that he failed to maintain the Chicago properties in a decent, safe, and sanitary condition, Marshall alleges that HUD was motivated to initiate the debarment proceedings not by this alleged failure, but by a desire to retaliate against him for his "hav[ing] been openly critical of HUD" in the context of an earlier dispute concerning subsidized property that he owned in Washington, D.C. Specifically, in the fall of 1995, HUD had declared Clifton Terrace Apartments, owned by an affiliate of Marshall, in default under a deed of trust held by HUD for the alleged failure to maintain the property in a decent, safe, and sanitary condition and sought to accelerate the entire indebtedness secured by the deed of trust. HUD also abated subsidy payments called for by the Section 8 contract pertaining to Clifton Terrace Apartments.

In response, Clifton Terrace Apartments filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Ultimately, the

_____

and lasted until he sold the projects. . . . Marshall's willful failure to comply with the [Section 8 agreements] is evidenced in part by his express oral and written refusal to perform all of the repairs identified by HUD and his on-site manager. .. . Marshall's disregard for his contractual obligations is further evidenced by the results of HUD's many inspections of the properties from March 3 to May 14, 1997. Despite frequent correspondence and discussions, Marshall did not make many of the repairs that were needed to return the projects to decent, safe, and sanitary condition, nor did he present a plan for making the repairs.

[5] The period of debarment runs from March 21, 1997, when the notice of suspension and proposed debarment was issued, to March 20, 2000. Although the debarring official had originally proposed a five-year debarment, he noted in the determination that adherence to the general rule of imposing not more than three years, see 24 C.F.R. § 24.320(a)(1), was appropriate in the absence of egregious conduct or extraordinary circumstances.

bankruptcy court granted HUD relief from the automatic stay to pursue a contractual right to assume possession of the property. HUD then filed an action in federal district court seeking to take possession of Clifton Terrace Apartments. The district court denied HUD's motion for preliminary injunction and later stayed the action to allow the parties to pursue mediation. The parties ultimately reached a settlement agreement under which HUD was to receive title to Clifton Terrace Apartments. Of asserted relevance to this action, the settlement agreement also contained the following language:

> After the Sale Date, HUD shall remove Clifton Terrace's ownership and/or management through One Management, as a basis for any administrative action, including specifically, for denial of Clifton Terrace, One Management, and/or any of the principals of Clifton Terrace, One Management, or their affiliates, should they request 2530 previous participation clearance; they will be considered by HUD in the same manner as 2530 previous participation certifications filed by any other entity pursuant to HUD's regulations and standards.

In this action, Marshall contends that HUD's actions with respect to the Chicago properties were motivated solely out of what he characterizes as the public criticism and embarrassment he inflicted upon HUD during the Clifton Terrace proceedings, and therefore that HUD has violated the Clifton Terrace settlement agreement's prohibition against any reliance upon Clifton Terrace as a basis for future administrative action.

Following receipt of the debarring official's decision to debar Marshall for his willful failure to maintain the Chicago properties in a decent, safe, and sanitary condition -- and, in the course thereof, to reject Marshall's claim that HUD was instead motivated by retaliation for the Clifton Terrace matter -- Marshall brought a ten-count complaint in federal district court, seeking judicial review and reversal of HUD's decision. Marshall alleged that his debarment violated the APA and the Clifton Terrace settlement agreement, that the procedures used by HUD to debar him did not comport with the APA and his due process rights under the Fifth Amendment of the United States Constitution, and that HUD had failed to adequately respond

6

to various Freedom of Information Act ("FOIA") requests which he made under 5 U.S.C.A. § 552 (West 1996 & Supp. 1999). The district court granted summary judgment in favor of HUD as to Counts I and II of Marshall's complaint as well as HUD's motion to dismiss the remaining counts. This appeal followed.

II.

We review the district court's decision granting HUD's motion for summary judgment and its motion to dismiss de novo. See Flood v. New Hanover County, 125 F.3d 249, 251 (4th Cir. 1997); Austin v. Owens-Brockway Glass Container, Inc., 78 F.3d 875, 877 (4th Cir. 1996). However, this court, like the district court, reviews the debarment decision by HUD pursuant to the APA, under which the agency's decision must be upheld unless "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.A. § 706(2)(A). "Under this narrow standard, we are not empowered to substitute [our] judgment for that of the agency." Wilson v. CHAMPUS, 65 F.3d 361, 364 (4th Cir. 1995) (internal quotation marks omitted) (alteration in original). Rather, our task is to determine "whether the agency conformed with controlling statutes, and whether the agency has committed a clear error of judgment." Id. (internal quotation marks omitted); see also Maryland Dep't of Human Resources v. United States Dep't of Agric., 976 F.2d 1462, 1475 (4th Cir. 1992).

III.

We begin with Marshall's appeal of the district court's decision to grant summary judgment for HUD on Counts I and II. Count I alleges that Marshall submitted substantial evidence contradicting the evidence submitted by HUD in support of the proposed suspension and debarment, and that the debarring official "should have concluded that HUD did not carry its burden of proof [under 24 C.F.R. § 24.314(c)] of establishing cause for debarment by the preponderance of the evidence." Count II alleges that HUD's allegations, even if true, do not constitute cause for suspension or debarment under 24 C.F.R. § 24.305.**6**

_____

**6** Suspension may be imposed pending completion of an investigation or debarment proceeding, see 24 C.F.R. § 24.400, based upon the same

7

Debarment may be imposed for "[v]iolation of the terms of a public agreement or transaction so serious as to affect the integrity of an agency program, such as . . . [a] willful failure to perform in accordance with the terms of one or more public agreements or transactions," 24 C.F.R. § 24.305(b)(1), or "for material violation of a statutory or regulatory provision or program requirement applicable to a public agreement or transaction," 24 C.F.R.§ 24.305(f). The agency bears the burden to prove its case by a preponderance of the evidence. See 24 C.F.R. § 24.314(c).

In this case, the debarring official found that Marshall had willfully failed to maintain the property as required by the Section 8 agreements in violation of § 24.305(b)(1) and that Marshall's conduct constituted a material violation of a program requirement applicable to the Section 8 agreement in violation of § 24.305(f).[7] In rendering this determination, the debarring official reviewed the evidence and concluded that Marshall had not maintained Whitney Young and South Lawndale in a "decent, safe, and sanitary" condition based upon the various deficiencies documented during the HUD inspections. Additionally, the debarring official relied upon photographs of the subsidized units showing, among other deficiencies, deteriorated porches with missing or rotting boards, sagging floors, cracked bricks and mortar, and unrepaired water damage in units and common areas.

Marshall primarily contends that the debarring official essentially ignored the conflicting evidence he presented by choosing instead to favor HUD's evidence as to the condition of the property. As noted previously, however, our function is not to substitute our judgment for

_____

causes for debarment set forth in § 24.305, see 24 C.F.R. § 24.405. Most of the procedures governing debarments also apply to suspensions. See 24 C.F.R. § 24.410-.420.

[7] Under the regulation, "[a]ffiliates" of a debarred party may be debarred on the same grounds if given specific notice and the opportunity to respond. See 24 C.F.R. § 24.325(a)(2). Persons or entities are "affiliates" if one controls, or has the power to control, the other. See 24 C.F.R. § 24.105. One Management, Inc. and Frederick Investment Corporation are "affiliates" of Marshall and were given notice and the opportunity to respond.

8

that of the debarring official, see Wilson, 65 F.3d at 364, nor are we "to re-weigh conflicting evidence [or] make credibility determinations," see Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Rather, we review the agency decision to ensure that it is not arbitrary, capricious, or an abuse of discretion. See 5 U.S.C.A. § 706(2)(A).

Marshall's particular reliance upon evidence he submitted to support his argument that many deficiencies were the result of tenant abuse and vandalism also does not avail him. The debarring official rejected Marshall's claim in this regard, noting that many of the deficiencies could not be explained by tenant abuse. Furthermore, the debarring official observed that:

> [t]he fact that the projects are old and in a poor neighborhood does not excuse the conditions at the projects.[Marshall] ha[s] not shown how the project's age or location adversely affect[ed] [his] ability to make needed repairs.

The district court concurred, noting that Marshall remained ultimately responsible for repairing the housing to ensure a decent, safe, and sanitary condition regardless of the cause of the needed repairs. We agree.

We likewise reject Marshall's reliance upon evidence he submitted which purported to show that other subsidized properties he owned had been maintained in a decent, safe, and sanitary condition. The debarment proceeding concerned the condition of the Chicago properties and the conditions pertaining to them. Obviously, Marshall cannot pick and choose which Section 8 agreements he will comply with or ward off appropriate administrative action by pointing to his compliance with unrelated agreements for unrelated properties.

Having reviewed the administrative record, it is clear that the debarring official's determination that the Chicago properties were not kept in decent, safe and sanitary condition and that Marshall did not cooperate in attempts to achieve this standard, is fully supported by the record.[8] Accordingly, we conclude that the debarring official

_____

[8] Marshall also asserts that there was insufficient evidence that the substandard conditions were the result of a "willful" violation justifying

9

did not act in an arbitrary, capricious, or unlawful manner in imposing debarment under 24 C.F.R. § 24.305. Hence, we affirm the district court's grant of summary judgment to HUD as to Counts I and II of Marshall's complaint.

IV.

Counts III through X of Marshall's complaint focus not on the issue of whether the condition of the Chicago properties warranted HUD's decision to debar him from further participation, but on his challenge to the manner in which the debarment proceeding was conducted and HUD's alleged motivation in seeking debarment. Marshall asserts that if any of these counts survive, the administrative process is tainted, and therefore, we must also reverse the district court's order granting HUD's motion for summary judgment as to Counts I and II. For the reasons that follow, we affirm the district court's dismissal of these remaining counts.

A.

We begin with Counts V and VI, in which Marshall alleges that HUD engaged in procedural irregularities in conducting the debarment proceeding. In particular, Marshall asserts that HUD's failure to conduct the debarment proceeding in accordance with its own regulations renders the decision to debar Marshall "arbitrary, capricious and not in accordance with law" in violation of 5 U.S.C.A. § 706(2)(A). We disagree.[9]

---

debarment under 24 C.F.R. § 24.305(b). While we conclude that the debarring official's finding as to willfulness is equally supported by the record, we note that the debarring official also concluded that, by virtue of the substandard condition of the subsidized property, Marshall had violated "material provisions" of the Section 8 agreements, which is an independent cause for debarment under 24 C.F.R.§ 24.305(f).

[9] Count VI alleges that these same procedural irregularities violated Marshall's due process rights under the Fifth Amendment of the United States Constitution. On appeal, however, Marshall has limited his argument to the alleged violation of the APA. In any event, because we conclude that HUD did not engage in any such procedural irregularities or violate its own regulations in conducting the debarment proceeding, Marshall's due process claim also fails.

10

Marshall's specific complaint centers on his belief that he was entitled to have the proceeding conducted in accordance with the formal procedures set forth in 24 C.F.R. §§ 26.1-26.26. These procedures, applicable to debarment hearings held before hearing officers, allow for such things as formal pleadings and motions, discovery, and cross-examination more akin to those available in an ordinary civil action. Marshall's claim fails, however, because the regulations did not require HUD to conduct Marshall's debarment proceeding in accordance with these more formal procedures.

Under 24 C.F.R. § 24.310, HUD is instructed to "process debarment actions as informally as practicable, consistent with the principles of fundamental fairness, using the procedures in §§ 24.311 through 24.314." The proceeding is initiated by the referral of cases to a debarring official for consideration, see 24 C.F.R. § 24.311, who then issues a notice stating the reasons for the proposed debarment, see 24 C.F.R. § 24.312. In response, the property owner may submit materials in opposition to the proposed debarment and may request a hearing. See 24 C.F.R. § 24.313(a). In some cases, the regulations require nothing further. If no genuine dispute over material facts exists, the debarring official may simply render "a decision on the basis of all the information in the administrative record, including any submission made by the respondent." 24 C.F.R. § 24.314(a). However, the regulations also afford the debarring official broad discretion in determining what, if any, additional proceedings should be conducted. Although he need not make a finding as to whether the respondent has demonstrated the existence of a genuine issue of material fact, "[t]he debarring official may , in his or her discretion, refer actions . . . in which there is no genuine dispute over material facts, to a hearing officer or other official for review of the administrative record and appropriate findings." 24 C.F.R. § 24.314(a)(1) (emphasis added).

If the debarring official finds that the respondent's submission does raise a genuine dispute of fact material to the proposed debarment, the respondent is "afforded an opportunity to appear with a representative, submit documentary evidence, present witnesses, and confront any witness the agency presents." 24 C.F.R. § 24.313(b). And, if additional proceedings are necessary to determine material facts, "[t]he debarring official may refer disputed material facts to another official

11

for findings of fact," 24 C.F.R. § 24.314(b)(2) (emphasis added), or "may refer disputed material facts and issues of law to a hearing officer for findings of fact and conclusions of law," 24 C.F.R. § 24.314(b)(2)(i) (emphasis added). Unlike a hearing official, the regulations limit a hearing officer to an Administrative Law Judge or a Board of Contract Appeals Judge. See 24 C.F.R. § 24.105. Only at this point do the procedures set forth in Part 26 apply. The hearing officer (i.e. the Administrative Law Judge or Board of Contract Appeals Judge) is directed to conduct the proceedings in accordance with the more formal procedures, whereas a hearing official's involvement remains informal.

Although acknowledging that the individual conducting the debarment hearing in this case was neither an Administrative Law Judge nor a Board of Contract Appeals Judge, Marshall contends that the hearing official was required to conduct the administrative proceeding pursuant to the more formal requirements delineated in 24 C.F.R. Part 26. In essence, Marshall asserts that the proper procedures to be applied were mandated not by the decision of the debarring official, in his discretion, to refer the case to a hearing official rather than a hearing officer, but by Marshall's belief that his response to the notice of debarment raised disputed material facts. Marshall's argument, however, fails to recognize the wide discretion afforded to the debarment official in such matters.

Upon receipt of Marshall's response to the notice of debarment and request for a hearing, the debarring official had the discretion to render a decision on the basis of the administrative record before him, or to refer the matter to a hearing official or hearing officer. He chose not to refer the matter to a hearing officer and, instead, chose to select a hearing official to conduct the hearing requested by Marshall. This decision was entirely appropriate pursuant to the discretion afforded the debarring official by 24 C.F.R. § 24.314(a)(1), and accordingly, the formal procedures of Part 26 simply did not apply to the debarment proceeding.[10]

_____

[10] The actual hearing was conducted in accordance with 24 C.F.R. § 24.313(a). The debarring official incorrectly stated in his written determination that a "hearing officer" conducted the hearing in accordance

12

Nor did the regulations require the debarring official to designate a hearing officer (or otherwise require application of the formal procedures in Part 26) simply because Marshall believed that his response had demonstrated a genuine issue of material fact. Initially we note that although the debarring official may refer a matter to a hearing officer, he is not required to do so even if he believes a dispute of material fact exists. See 24 C.F.R. § 24.314(b)(2). Rather, in such cases 24 C.F.R. § 24.313(b)(1) requires only that Marshall "be afforded an opportunity to appear with a representative, submit documentary evidence, present witnesses, and confront any witness the agency presents."

In any event, having reviewed the administrative record in this case, we conclude that the debarring official did not abuse his discretion, nor act in an arbitrary, capricious, or unlawful manner, by not finding that a genuine dispute of material fact existed or by not referring the matter to a hearing officer. Although Marshall sought to escape debarment as a result of the violation of the Section 8 agreements applicable to the Chicago properties and, in part, by asserting that abuse by the tenants resulted in the substandard conditions, there appears to be no genuine dispute that substandard conditions did exist. The debarring official possessed the discretion to allow Marshall to escape debarment notwithstanding these conditions, but the regulations certainly allowed for its imposition.

Accordingly, we conclude that the debarring official did not abuse his discretion in conducting the proceedings under the informal procedures allowed by the regulation or by concluding that debarment was appropriate. Once placed on notice of the proposed debarment, Mar-

_____

with 24 C.F.R. § 24.313(b). As noted previously, a "hearing officer," defined in the regulations as including only an Administrative Law Judge or Board of Contract Appeals Judge, conducts hearings under § 24.313(b), whereas a "hearing official" conducts hearings under the less formal procedures of the regulation. The hearing in this case was conducted by neither an Administrative Law Judge nor a Board of Contract Appeals Judge. Thus, we reject plaintiffs' attempt to transform the nature of the hearing by referencing what were obvious misstatements by the debarring official.

13

shall was allowed to "submit, in person, in writing, or through a representative, information and argument in opposition to the proposed debarment." 24 C.F.R. § 24.313(a). He was additionally granted a hearing before a hearing official to further present his case in response. Under these circumstances, nothing further was required by the regulations.[11]

B.

Marshall also contends that the district court erred in dismissing Counts III, IV, and X of the complaint, all of which rely upon the Clifton Terrace matter as a basis for overturning the debarring official's determination. We disagree.

As noted previously, HUD and Marshall were involved in a dispute over whether Marshall had complied with his obligation to maintain the Clifton Terrace apartments in a decent, safe, and sanitary condition. The dispute was ultimately resolved via a settlement agreement, under which HUD received title to the property. Marshall contends that his public criticism of HUD during the pendency of this dispute, coupled with the alleged embarrassment inflicted upon HUD in the proceedings, motivated the instant debarment proceeding and, consequently, violated the settlement agreement's provision that "HUD

_____

[11] Immediately prior to the debarment hearing, Marshall requested a continuance, prompted by his receipt of evidence upon which HUD intended to rely, which was denied by the hearing official. As part of his challenge to the manner in which the debarment proceeding was conducted, Marshall complains that he was afforded insufficient time to respond to the evidence submitted by HUD. However, although the hearing official denied Marshall's request for a continuance of the hearing, he left the record open to allow both parties to submit supplemental information. He also granted Marshall's subsequent request for yet more additional time to submit evidence -- extending the original 15-day post-hearing deadline to August 11, 1997. Marshall also complains because HUD attempted to supplement the record after the August 11, 1997 deadline. The hearing official, however, ultimately ruled that no materials submitted after the August 11, 1997 deadline would be considered part of the record in the suspension and debarment proceedings. We find no error or prejudice in the manner in which the hearing official addressed these evidentiary submissions.

14

shall remove Clifton Terrace's ownership and/or management through One Management, as a basis for any administrative action." We, like the district court, are satisfied that Marshall has failed to state a claim for violation of the Clifton Terrace settlement agreement.

Initially we note that were we to accept Marshall's argument, all administrative action initiated by HUD against Marshall or his affiliated companies in the future -- regardless of the location of the property or the stated basis for the action -- would be subject to a claim that HUD was motivated not by the stated basis, but solely by an alleged "vendetta" arising from the Clifton Terrace matter. The referenced paragraph in the Clifton Terrace settlement agreement simply cannot be interpreted to allow such a result. Rather, the obvious intent of the language was not to bar HUD from further administrative action against Marshall for violations of Section 8 agreements applicable to other properties, but to evidence an agreement that HUD would not rely upon Clifton Terrace as a basis for the denial of "previous participation clearance" and, of course, that HUD would be prohibited from pursuing further administrative action against Marshall in the Clifton Terrace matter. It simply cannot, however, be fairly read to prohibit HUD from pursuing future administrative action against Marshall arising out of substandard conditions existing at other subsidized properties owned by Marshall or his affiliated companies.

Nor are we persuaded by Marshall's contention that HUD violated this portion of the agreement because some of its employees involved with the Chicago properties had participated in the Clifton Terrace matter. The settlement agreement could have, but did not, preclude HUD personnel involved in the Clifton Terrace matter from participating in future matters involving subsidized property owned by Marshall or his affiliated companies. And, in any event, the debarring official's decision to debar Marshall was fully supported by Marshall's failure to maintain the Chicago properties in a decent, safe, and sanitary condition. Accordingly, we hold that the district court properly concluded that Marshall failed to state a claim that the debarment proceeding violated the Clifton Terrace settlement agreement or

15

that the Clifton Terrace matter was relied upon to support the decision to debar Marshall.**12**

C.

In Count VII, Marshall contends that HUD improperly combined prosecutorial and adjudicative functions by permitting improper relationships to exist between the prosecutors and the hearing official in violation of 5 U.S.C.A. § 554(d) (West 1996) of the APA. We disagree.

Under § 554(d), "[a]n employee or agent engaged in the performance of investigative or prosecuting functions for an agency in a case may not, in that or a factually related case, participate or advise in the decision . . . except as witness or counsel in public proceedings." Marshall contends that this provision was violated because two HUD employees involved in the prosecution of the Clifton Terrace matter acted as advisors to the hearing official in the Chicago matter (one of whom normally worked directly or indirectly under the supervision of a prosecuting attorney), and because a HUD employee previously involved in prosecuting the Clifton Terrace matter assisted in the prosecution of the Chicago matter.

As an initial matter, we note HUD's contention that § 554(d) is inapplicable to the debarment proceeding because the proceeding is not statutorily required. See 5 U.S.C.A. § 554(a) (providing that its provisions apply to "adjudication[s] required by statute"). Although we have not decided the issue, see Leitman v. McAusland, 934 F.2d 46 (4th Cir. 1991), at least one circuit has held that § 554 is inapplica-

_____

**12** Although Marshall broadly asserts that the district court erred in dismissing all three counts based upon the Clifton Terrace property, he limits his discussion on appeal to the dismissal of Count X, which directly asserts that HUD violated the Clifton Terrace settlement agreement. The related Counts III and IV allege that the debarment proceeding violated the APA and Marshall's due process rights because the Clifton Terrace proceeding, as opposed to the condition of the Chicago properties, was the basis for the debarment proceeding. In any event, for reasons discussed infra, we conclude that Counts III and IV were also properly dismissed by the district court.

ble to debarment proceedings, see Girard v. Klopfenstein, 930 F.2d 738, 741 (9th Cir. 1991). Even assuming that § 554(d) applies to HUD's debarment proceeding, however, we agree with the district court's determination that HUD neither conducted the debarment proceeding improperly nor violated § 554(d).

As an initial premise, we note that there is no basis upon which to conclude that the hearing official or the HUD advisor engaged in the performance of investigative or prosecuting functions for HUD in the debarment proceeding. Rather, at most, we are faced with a situation in which the HUD advisor to the hearing official in the debarment proceeding had previously participated in the investigation and prosecution of the Clifton Terrace matter.

The Clifton Terrace matter did involve the same parties and some of the same HUD employees. However, it arose from facts and circumstances completely unrelated to the Chicago matters. The Chicago matters, of course, concerned different subsidized housing which, although owned by the same landlord, was required to be kept in a decent, safe, and sanitary condition under separate Section 8 agreements entered into between HUD and Marshall. While related in the sense that, in both cases, HUD took issue with Marshall's maintenance of the subsidized housing as required by the applicable Section 8 agreements, we fail to see how they are factually related. In addition, as with Marshall's earlier attempts to insert the Clifton Terrace proceeding into the debarment proceeding, we decline to endorse Marshall's theory that he may forever use the Clifton Terrace matter to both escape his contractual obligations with HUD and defend against HUD's attempts to enforce those obligations on behalf of the tenants whom the agreements are designed to protect.

We likewise affirm the district court's dismissal of Count VIII of Marshall's complaint, which alleged that the same facts underlying Count VII violated his due process rights under the Fifth Amendment of the United States Constitution. It is well established that due process rights are not violated simply by the combination of the investigative, prosecutorial, and adjudicative functions in one agency. Rather, actual bias or a high probability of bias must be present before due process concerns are raised. See Withrow v. Larkin, 421 U.S. 35,

17

46-53 (1975).**13** Although a HUD employee acted as an advisor to the hearing official, there is no basis upon which to conclude that the advisor exerted any improper influence upon the hearing official or that the hearing official was otherwise biased as a result of any HUD participant. Nor is there any indication that the Clifton Terrace matter entered into the debarring official's determination in this case or that his decision was tainted or otherwise rendered unsupportable by the roles of any other HUD employees participating in the debarment proceeding. On the contrary, the administrative record reveals that the debarment decision was fully supported by the evidence presented regarding the condition of the Chicago properties.

D.

Finally, Marshall contends that the district court erred in granting HUD's motion to dismiss Count IX, which asserts a claim under the Freedom of Information Act. See 5 U.S.C.A.§ 552. Specifically, Marshall alleges that he made in excess of seven requests for information, to which HUD failed to fully respond. The district court dismissed the claim because Marshall failed to identify the specific documents requested, when they were requested, to whom those requests were directed, or the extent of HUD's responses. See 5 U.S.C.A. § 552(a)(3)(A) (West Supp. 1999). We find no error in the district court's dismissal on this basis and, accordingly, affirm.

_____

**13** Marshall's reliance upon Utica Packing Co. v. Block, 781 F.2d 71 (6th Cir. 1986), does not avail him. Utica Packing involved an action filed by the United States Department of Agriculture ("USDA") seeking to withdraw meat inspection services from a meat packing company and, thereby, effectively put the company out of the meat packing business. When the appointed hearing officer issued a decision dismissing the charges, USDA officials -- who "`violently disagreed'" with the hearing officer's decision -- "unceremoniously removed him [from the case] and presented a petition for reconsideration to their hand-picked replacement." Id. at 78. Unlike the litigant in Utica Packing, Marshall has alleged no facts or circumstances which would render "the risk of unfairness [in the debarment proceeding] `intolerably high.'" Id.

18

V.

For the foregoing reasons, we conclude that HUD's decision to debar Marshall was neither arbitrary or capricious, nor an abuse of discretion. The district court properly granted HUD's motion for summary judgment as to Counts I and II and HUD's motion to dismiss Counts III through X of Marshall's complaint, and accordingly, we affirm the judgment below.

AFFIRMED

19