PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

WICKWIRE GAVIN, P.C.,
              *Plaintiff-Appellant,*

v.                                          No. 02-2310

UNITED STATES POSTAL SERVICE,
              *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CA-01-1900-A)

Argued: September 25, 2003

Decided: January 30, 2004

Before WILKINSON, TRAXLER and GREGORY, Circuit Judges.

Affirmed by published opinion. Judge Gregory wrote the opinion in which Judge Wilkinson joined. Judge Traxler wrote a separate concurring opinion.

## COUNSEL

**ARGUED:** David P. Hendel, WICKWIRE GAVIN, P.C., Vienna, Virginia, for Appellant. Steven E. Gordon, Assistant United States Attorney, Alexandria, Virginia, for Appellee. **ON BRIEF:** Stephanie M. Himel-Nelson, WICKWIRE GAVIN, P.C., Vienna, Virginia, for Appellant. Paul J. McNulty, United States Attorney, Alexandria, Virginia, for Appellee.

**OPINION**

GREGORY, Circuit Judge:

Wickwire Gavin, P.C., ("WG") serves as counsel for T&S Products, Inc. ("T&S"), a former supplier of packing supplies to the United States Postal Service ("USPS" or "Postal Service"). In 2000, T&S lost its bid to supply packaging materials to the Postal Service. Thereafter, WG represented T&S in an unsuccessful bid protest action. *See T&S Prods. Inc. v. United States*, 48 Fed. Cl. 100 (2000). On July 3, 2001, WG submitted a request pursuant to the Freedom of Information Act ("FOIA") seeking USPS's contract with Hallmark Cards, Inc., whose former subsidiary was the successful bidder for the packaging contract, as well as other documents related to purchases under the contract. USPS produced the contract and other responsive documents, but citing exceptions to FOIA, USPS withheld thirteen pages of spreadsheets detailing quantity and pricing information. WG initiated a challenge in federal court to USPS's withholding. On cross-motions for summary judgment, the district court held that USPS properly invoked FOIA Exemptions 3 and 4 in withholding the spreadsheets. For the reasons stated below, we affirm.

I.

In the bidding process through which T&S unsuccessfully bid to become USPS's exclusive provider of mailing supplies, USPS chose the Ensemble Company (hereinafter "Hallmark"), a former subsidiary of Hallmark Cards, Inc., which Hallmark has now fully absorbed, to be the exclusive provider. As noted above, WG then represented T&S in an unsuccessful bid protest action following USPS's decision to award the contract to Hallmark. *See T&S Prods., Inc. v. United States*, 48 Fed. Cl. 100 (2000).

On July 3, 2001, WG submitted a FOIA request seeking a copy of USPS's contract with Hallmark and other documents related to the sales and revenue generated under the contract.[1] USPS provided docu-

---

[1]The FOIA request sought: (1) the contract awarded to Hallmark; (2) all modifications and changes to the contract; (3) the most current pricing

ments responsive to the first three requests on August 1, 2001, and forwarded the other two requests to another internal department. On August 29, 2001, USPS denied access to items four and five, citing 39 C.F.R. §§ 265.6(b)(3), 265.6(b)(5). On November 26, 2001, USPS denied WG's administrative appeal.

Thereafter, WG filed a complaint in federal court, seeking review of USPS's partial denial of the FOIA request. The withheld information at issue is redacted from thirteen pages of spreadsheets relating to USPS's Ready Post Initiative ("RPI"), a program through which Hallmark is the exclusive supplier of packaging products to USPS for sale at its facilities.[2] The spreadsheets concern purchase information pursuant to the Hallmark/USPS contract. Specifically, they include income statements under the RPI and list item retail value of the products shipped. Through the RPI, postal consumers can purchase packing materials and arrange for shipment at one location. Thus, USPS's services are directly pitted against competitors such as Mail Boxes Etc., UPS, and other all-in-one outlets.

USPS and WG both filed motions for summary judgment. The district court denied the parties' cross-motions for summary judgment pending completion of discovery. Thereafter, the parties renewed their motions for summary judgment, and both parties submitted affidavit testimony and other evidence relevant to the data in question.

After *in camera* review of the withheld documents, the district

---

and product schedule for all product line items being supplied to USPS by Hallmark; (4) "Any document showing a summary of: (a) the quantity of each product line item purchased by USPS under the contract; and (b) the total purchase price paid by USPS for each product line item purchased by USPS under the contract"; and (5) "Any document showing the most current figures for USPS net revenue from USPS's retail sale of items supplied under the above contract. (Note: "net revenue" means USPS sales revenue minus USPS costs.)" (J.A. 25-26.) Only the fourth and fifth requests are at issue on appeal. *See* Appellant's Br. at 3.

[2]Appellee states that "[t]hrough the RPI, USPS sells packaging materials to consumers (*e.g.*, postal consumers may buy envelopes and other packaging materials in post offices)." Appellee's Br. at 3 n.2.

court granted summary judgment for USPS. The district court held USPS properly withheld the data pursuant to FOIA Exemptions 3 and 4, 5 U.S.C. §§ 552(b)(3), 552(b)(4).[3] First, the court found Exemption 3 applicable because the Postal Reorganization Act, 39 U.S.C. § 410(c)(2), contains an exception to the FOIA disclosure requirement whereby the postal service is not required to disclose "information of a commercial nature, including trade secrets, whether or not obtained from a person outside the Postal Service, which under good business practice would not be publicly disclosed." Dist. Ct. Op. at 8 (quoting 39 U.S.C. § 410(c)(2)) (J.A. 697.) This provision comports with Congress's overall purposes in passing the Postal Reorganization Act, which include assuring that USPS "be run more like a business than had its predecessor, the Post Office Department." *Franchise Tax Bd. of Cal. v. United States Postal Serv.*, 467 U.S. 512, 520 (1984); *see also Nat'l Ass'n of Greeting Card Publishers v. United States Postal Serv.*, 462 U.S. 810, 822 (1983) (noting that under the Act "Congress sought to ensure that the Postal Service would be managed in a businesslike way" (internal quotation marks and citation omitted).[4] Based on USPS's showing that other companies do not disclose such data, the district court held that Exemption 3 was applicable. Dist. Ct. Op. at 17-18 (J.A. 706-07.)

The district court also held that Exemption 4, § 552(b)(4), which protects privileged or confidential trade secrets or other commercial

---

[3]Section 552(b)(3) provides that FOIA does not apply to matters "specifically exempted from disclosure by statute . . . ." 5 U.S.C. § 552(b)(3). Section 552(b)(4) permits withholding of "trade secrets and commercial or financial information [that are] obtained from a person and [are] privileged or confidential . . . ." 5 U.S.C. § 552(b)(4)

[4]Before the Reorganization Act, the Post Office Department was an executive branch department headed by a member of the President's Cabinet. Thereafter, the Postal Office Department became USPS, an independent agency of the Executive Branch. 39 U.S.C. § 201. Under the Act, USPS thus received broad political and managerial independence as the Postmaster General was removed from the President's cabinet, Congress's role in postal ratemaking ended, and the independent agency was formed. *See generally Mail Order Ass'n. of Am. v. United States Postal Service*, 986 F.2d 509, 519-21 (D.C. Cir. 1993) (discussing purpose and effects of the Act).

or financial information, was applicable.[5] The district court reasoned that the contested data was "privileged or confidential" because disclosure would "hamper [USPS's] ability to obtain similar information from other private companies, and would likely also harm Hallmark's competitive position." Dist. Ct. Op. at 21 (J.A. 710.)

## II.

We review the district court's decision granting summary judgment de novo. *Marshall v. Cuomo*, 192 F.3d 473, 478 (4th Cir. 1999). FOIA cases are generally resolved on summary judgment once the documents at issue have been properly identified. *See, e.g.*, *Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993). FOIA places the burden on the government agency to sustain its action to withhold information under any of the FOIA Exemptions. 5 U.S.C. § 552(a)(4)(B). In reviewing a district court's grant of summary judgment in favor of the government in a FOIA action, we must determine de novo whether, after taking the evidence in the light most favorable to the nonmovant, there remains no genuine issue of material fact and the government is entitled to judgment as a matter of law. *Ethyl Corp. v. EPA*, 25 F.3d 1241, 1246 (4th Cir. 1994). We review factual conclusions that place a document within a FOIA exemption under a clearly erroneous standard. *Id.* Whether a document fits within one of FOIA's prescribed exemptions is a matter of law, upon which the district court is entitled to no deference. *Id.* Finally, we narrowly construe the FOIA exemptions in favor of disclosure. *See J.P. Stevens Co. v. Perry*, 710 F.2d 136, 139 (4th Cir. 1983).

---

[5]We have held that FOIA Exemption 4 "covers (1) trade secrets and commercial or financial information, (2) obtained from a third person outside the government, (3) that is privileged or confidential." *Acumenics Research & Tech. v. United States Dep't of Justice*, 843 F.2d 800, 807 (4th Cir. 1988). To satisfy Exemption 4, the party seeking to avoid disclosure must "'show the likelihood of substantial competitive harm'" would result from disclosure. *Hercules, Inc. v. Marsh*, 839 F.2d 1027, 1030 (4th Cir. 1988) (quoting *Gulf & W. Indus., Inc. v. United States*, 615 F.2d 527, 530 (D.C. Cir. 1979).

### III.

Appellant WG first argues that the contested spreadsheet data is not governed by FOIA Exemption 3. WG contends that the district court erred in failing to include an "additional implied requirement of competitive harm" in applying Exemption 3, and generally overstated the scope of the Exemption.

Congress enacted FOIA, 5 U.S.C. § 552, to permit a "policy of broad disclosure of Government documents in order to ensure 'an informed citizenry, vital to the functioning of a democratic society.'" *FBI v. Abramson*, 456 U.S. 615, 621 (1982) (citations omitted); *see also Bowers v. United States Dep't of Justice*, 903 F.2d 350, 353 (4th Cir. 1991) ("FOIA was enacted as a general disclosure statute pertaining to all federal records."). In enacting the statute, Congress also recognized that "legitimate governmental and private interests could be harmed by release of certain types of information." *Id.* Accordingly, Congress crafted nine exemptions to FOIA. 5 U.S.C. § 552(b).

Exemption 3 provides that FOIA does not apply to matters that are "specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, *or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld . . . .*" 5 U.S.C. § 552(b)(3) (emphasis added). USPS contends, and the district court held, that the Postal Reorganization Act, 39 U.S.C. § 410(c)(2), satisfies the second requirement of Exemption 3. Section 410(c)(2) of the Postal Reorganization Act provides that under various statutes, including FOIA, USPS may withhold "information of a commercial nature, including trade secrets, whether or not obtained from a person outside the Postal Service, which under *good business practice* would not be disclosed." 39 U.S.C. § 410(c)(2) (emphasis added).[6]

---

[6]Below, WG brought a facial challenge to the use of § 410, arguing that section "is not sufficiently definite to satisfy the requirements of Exemption 3." The district court, like the other courts to consider the issue of whether § 410 satisfies Exemption 3, correctly held that it does. *See Nat'l W. Life Ins. Co. v. United States*, 512 F. Supp. 454, 459 (N.D.

In reviewing the district court's holding that the "good business practice" exception applied to the spreadsheets, we first recognize that facially there would appear to be some tension between the Postal Reorganization Act and FOIA generally. On one hand, Congress established USPS "intend[ing] that it should operate more like a private business than a governmental agency." *National Western*, 512 F. Supp. at 462; *see also Loeffler v. Frank*, 486 U.S. 549, 556 (1988) (noting that Congress designed the Postal Service to run more like a business than had its predecessor). On the other hand, through FOIA, the "Postal Service is still subject to public responsibility . . . ." *National Western*, 512 F. Supp. at 462. However, this apparent tension between the statutes dissipates upon review of the "good business practice" exception. Congress spoke loudly through the Postal Reorganization Act, providing USPS with a broad release from many FOIA disclosure requirements with which other agencies must comply. 39 U.S.C. § 409 (stating that 5 U.S.C. § 552 "shall apply to the Postal Service" but "shall not require disclosure of . . . information of a commercial nature . . . which under good business practice would not be publicly disclosed").

In *National Western*, the court stated that the contours of the "good business practice" exemption were to be gleaned by "looking to the commercial world, management techniques, and business law, as well as to the standards of practice adhered to by large corporations." 512 F. Supp. at 459. Appellant argues that the district court erred in finding Exemption 3 satisfied, because the court's holding was largely based on a finding that other corporations did not disclose such information to shareholders. At the district court, USPS established a foun-

Tex. 1980) (holding § 410(c)(2) qualifies as an exemption statute); *Piper & Marbury LLP v. United States Postal Serv.*, No. Civ. A. 99-2383, 2001 WL 214217, at *3 (D.D.C. Mar. 6, 2001) (same); *Weres Corp. v. United States Postal Serv.*, No. 95-1984, 1996 U.S. Dist. Lexis 22636, *6-7 (D.D.C. Sept. 23, 1996) (same); *see also Robinett v. United States Postal Serv.*, No. Civ. A. 02-1094, 2002 WL 1728582, at *3 (E.D. La. July 24, 2002) (following *National Western* and *Piper & Marbury*). Rather than pursuing such a facial challenge to the applicability of § 410 on appeal, Appellant asserts only that the district court overstated the scope of the "good business practice" exemption.

dation for the "good business practice" exception by entering evidence into the record detailing that large corporations do not publicly disclose information similar to the RPI data at issue, a showing which WG failed to rebut. WG claims, however, that the district court should have analyzed whether the data would cause USPS competitive harm. It contends that without reading an implied "competitive harm" requirement into 39 U.S.C. § 410(c)(2), the "agency would have unfettered discretion to determine what it may withhold, which would essentially render the FOIA inapplicable whenever the agency wished to withhold embarrassing information from the public." Appellant's Br. at 22-23.

In support of its assertion that the district court did not properly apply an implied "competitive harm" requirement, WG claims that the case law on the "good business practice" exception is clear that USPS "cannot simply withhold everything a private company might." Appellant's Br. at 26-27. WG asserts that *National Western* and *Piper & Marbury* directly support its argument that the RPI information does not fall under the "good business practice" exemption. We find these arguments unconvincing.

In *National Western*, a FOIA requester sought the names and duty stations of USPS employees in two cities. USPS refused to disclose the list, and the court granted summary judgment for the requester, holding that the names and addresses did not constitute "commercial information" under § 410(c)(2). *National Western*, 512 F. Supp. at 462. Therefore, the court did not reach the issue of whether the "good business practice" exemption was applicable, but found that "brief comments are perhaps necessary . . . because the government has implicitly argued that the public interest will be disserved by the disclosure of this information." *Id.* Despite the absence of a holding supporting Appellant's position, WG relies on *National Western*'s dicta in which WG finds the proposition that the "good business practice" standard does not allow the USPS to withhold *everything* a commercial entity might.[7]

---

[7]The court states, in dicta, "[a]lthough it may not be good business practice for a private company to disclose names and addresses of its employees, that is not the only concern to be considered. The Postal Ser-

Citing *Piper & Marbury*, Appellant argues that other courts have rejected similar USPS exemption claims. In *Piper & Marbury*, however, the information at issue was a contract between USPS and DHL that the Piper & Marbury firm requested on behalf of its client, UPS. USPS argued the contract was commercial information that would not be disclosed under the "good business practice" exemption. The magistrate judge rejected USPS's claim. The court held that because USPS was "trying to withhold the entire agreement and not merely particular information in it," the contract in its entirety did not qualify as "information" under FOIA or 39 U.S.C. § 410(c)(2). 2001 WL 214217, at *3. The court reasoned, "the exemptions at issue were meant to protect knowledge, figures or data, and not entire agreements, [as] is supported by even a superficial reading of the exemptions themselves." *Id.* at *4. Thus, as the district court recognized, *see* Op. at 14 (J.A. 703), *Piper & Marbury* is readily distinguishable because in that case the "information" at issue was an entire contract, and here USPS has already provided the contract under FOIA. At issue in this case is the data generated pursuant to the contract — indeed the "knowledge, figures or data" themselves to which the court in *Piper & Marbury* referred.

Not only is WG's reliance on *National Western* and *Piper Marbury* unpersuasive, but Appellant has also failed to make *any* showing that USPS's competitors, or any other businesses, do disclose the type of information at issue in this case. Whereas the government agency has presented evidence showing that large companies do not disclose such information, WG has completely abandoned its duty to refute that

---

vice is still subject to public responsibility, as evidenced by the applicability to the Postal Service of [FOIA]." *National Western*, 512 F. Supp. at 462. WG's argument is inapposite, however. The statement that under FOIA USPS cannot withhold "everything" a private business might is little more than a hollow truism. For WG's reading of FOIA's applicability to USPS says nothing of how broadly 39 U.S.C. § 409(c)(2) exempts USPS from disclosure requirements with which other government actors must comply. For no one claims that USPS is solely a corporate entity entirely unhindered by FOIA, yet WG wishes to convert USPS into a government agency no different from any other, blithely glossing over the substantial leeway Congress has accorded the Postal Service under the statute.

"under good business practice [such information] would not be publicly disclosed." 39 U.S.C. § 410(c)(2). The statutory language unambiguously provides that precisely the type of information, which WG neglected to enter into the record, is a relevant consideration. In determining whether Exemption 3 applies, it is uncontroverted that the statutory term "good business practice" should be decided with reference to what businesses normally do. *See National Western*, 512 F. Supp. at 459 (noting that to determine what constitutes such practice, the agency can refer to business law and management techniques in the commercial domain). WG's failure to build any record whatsoever concerning the business practices of USPS's competitors is fatal. In fact, at oral argument WG conceded that other businesses do not disclose such information. On this record, we must affirm the district court's determination that the "good business" practice exception of 39 U.S.C. § 410(c)(2) justified USPS's invocation of FOIA Exemption 3.

In its brief and at oral argument, WG continued to rely solely on its assertion that a finding of competitive harm is necessary for USPS to invoke Exemption 3. We find this argument unsupported by the statutory text or its application. In making this argument, WG is first unable to locate an implied competitive harm requirement in the statute's text or its subsequent application. *See, e.g.*, Appellant's Br. at 28 (arguing without citation that "the Postal Service must also show that a disclosure would cause it competitive harm . . . .").[8] Thus, in urging this interpretation of the Postal Reorganization Act's "good business practice" exception, WG entirely ignores Justice Frankfurter's three principles of statutory construction: "(1) Read the statute,; (2) read the statute; (3) read the statute!" Henry J. Friendly, *Mr. Justice Frankfurter and the Reading of Statutes*, *in*, *Benchmarks* 196, 202 (1967) (quoting Justice Frankfurter).

---

[8]While the Postal Service's regulations create an express exemption category for records "which would be of potential benefit to persons or firms in economic competition with the Postal Service," 39 C.F.R. § 265.6(b)(3)(vi), nowhere does it make competition, or competitive harm a *requirement* for exemption. *See id.* § 265.6(b)(3) (detailing that information of a commercial nature "*includes, but is not limited to*" the "economic competition" nondisclosure provision as well as other similar provisions) (emphasis added).

The notion that the Postal Reorganization Act should be read to contain an "implied competitive harm" requirement is further dispelled by the statute's language and the purposes behind the enactment, whereby Congress sought to make USPS a more businesslike entity. *See, e.g.*, S. Rep. No. 912, 91st Cong., 2d Sess. 2 (1970) ("Senate Report") ("[P]ostal management must now be given the unfettered authority and freedom it has been denied for years to maintain and operate an efficient service."); H. Rep. No. 1104, 91st Cong., 2d Sess. 6 (1970), *reprinted in* 1970 U.S.C.C.A.N. 3649, 3650 (1970) ("House Report") (stating the Act would "[e]liminate serious handicaps that are now imposed on the postal service by certain legislative, budgetary, financial, and personnel policies that are outmoded, unnecessary, and inconsistent with the modern management and business practices that must be available"); *Milner v. Bolger*, 546 F. Supp. 375, 378 (E.D. Cal. 1982) ("In order to facilitate the sound, businesslike operations mandated by Congress, the Postal Service was given a considerable degree of independence . . . ."). WG simply fails to show where under the Act's text, or its implementation by USPS, its favored implied competitive harm requirement lies.

Moreover, to read an implied "competitive harm" requirement into the good business practice exception necessarily implies that Congress acted superfluously. For WG's reading of the Postal Reorganization Act is logically unsound in that it asks us to assume that although the Postal Service, like other agencies, is already empowered to withhold data pursuant to FOIA's Exemption 4 upon a showing of a "substantial likelihood of competitive harm," *Marsh*, *supra*, Congress nonetheless passed another withholding provision for USPS with precisely the same "competitive harm" requirement. We decline to make this strained interpretation of 39 U.S.C. § 410(c)(2).

Rather than analyzing "competitive harm" as an implied additional requirement for withholding under § 410(c)(2), we can conceptualize competitive harm as one of many considerations embedded within the good business practice exception itself. That is, Congress passed the exception, recognizing that the type of information which businesses do not ordinarily disclose is kept private, in part, to help maintain a competitive advantage. Other private companies do not disclose such information precisely because they are competing. Thus, any notion of a competitive harm component to the good business practice

exception is an internal consideration, rather than an additional prong to be satisfied. As noted above, if "competitive harm" were an *additional* requirement, the Postal Reorganization Act would have been substantially superfluous within the FOIA context.[9] In stating that the USPS was to act in the same competitive mode as other businesses, Congress legislated broadly and the newly composed USPS was a sea change from its predecessor. In fact, this drastic change was met with strong opposition by members of Congress who rued the idea of the new, independent, businesslike entity. *See* Senate Report at 23 (setting forth the individual views of Senator Yarborough who stated: "Groups of postal employees, as well as groups of mail users, have complained to me of inequities in the present bill if the moneymaking, budget-balancing, anti-public-service, corporate method is saddled on the Post Office Department."); *Mail Order Ass'n of Am.*, 986 F.2d at 519 (stating "one representative feared the Postmaster General would become 'the absolute czar of the Postal Service, . . . completely and effectively remove[d] . . . from any possible control by the people or the people's elected representatives.'" (quoting 116 Cong. Rec. at 19845 (statement of Rep. Gross)). Because WG fails to find statutory support for its argument regarding an implied competitive harm requirement, and its concerns seem echoed by those members of the legislature that opposed the Postal Reorganization Act generally, its qualms regarding the Postal Reorganization Act's FOIA exception seem ill-suited to determination by the courts, and more properly lodged with Congress.

Furthermore, the possibility that the "good business practice" exception could be wrongly applied in a manner so broad that WG's concern that FOIA would be "inapplicable whenever the agency wished to withhold embarrassing information from the public" appears extremely unlikely to materialize. Such speculation by WG overlooks the limiting provisions embedded within the text of the "good business practice" exception.

---

[9]It is perhaps conceivable, though highly doubtful, that USPS might withhold data that fit Exemption 4 but failed § 410(c)(2). Hypothetically, perhaps because of something unique to USPS, some narrow category of information normally disclosed by businesses — thus failing Exemption 3 — would cause USPS competitive harm, satisfying the requirements of 5 U.S.C. 552(b)(4).

On its face, the Postal Reorganization Act offers protection against overly broad application of the exception by requiring that the material at issue qualify as "information." 39 U.S.C. § 410(c)(2). Accordingly, USPS cannot withhold entire agreements or even entire documents without explanation. Instead it must point to particular knowledge, figures or data that both qualifies as information, and would not be disclosed by private businesses. Indeed, in this light, the "good business practice" exception is perfectly consistent with FOIA's overall mandate. As we have recognized, "'[t]he focus of the FOIA is information, not documents.'" *City of Va. Beach v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1253 (4th Cir. 1993) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

In this case, the data in question is undisputably "information." Moreover, the information that USPS has withheld goes to the heart of the Postal Reorganization Act's purpose, making the United States Postal Service more businesslike, similar in function and management to its competitors. *See Nat'l Ass'n of Greeting Card Publishers*, 462 U.S. at 822; *Peoples Gas, Light & Coke Co. v. United States Postal Serv.*, 658 F.2d 1182, (7th Cir. 1981) (noting "Congress's express desire that the Postal Service operate in a businesslike fashion"); *May Dep't Stores v. Williamson*, 549 F.2d 1147, 1148 (8th Cir. 1977) ("Congress specifically declared in creating the USPS that it should be conducted in a businesslike way"); *Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*, 146 F. Supp. 2d 643, 659 (D.N.J. 2001) ("[USPS] has been granted considerable autonomy for certain purposes, particularly to facilitate more competitive business practices"); House Report at 3653 ("An effective postal service needs an updated financial policy that is fully responsive to operating needs."); *id* at 3654 (stating the Act grants "authority to conduct the affairs of the Postal Establishment on a business like basis"); *id.* at 3656 (requiring USPS to submit, as part of its biennial reports, profit and loss statements certified by a firm of independent public accountants); *id.* at 3659 ("The Postal Service is to become self-sustaining—eliminating the postal deficit—by January 1, 1978.").

In short, WG has fully failed to refute that other businesses, including other all-in-one pack and mail companies, do not disclose this type of information. USPS's withholding under Exemption 3 appears

to be a well-reasoned response, measured to prevent an uneven playing field of information within a competitive industry. Even if we accepted WG's doomsday scenario that the USPS might someday abuse the "good business practice" exception to avoid FOIA's disclosure requirements, it would be unwarranted to engraft a requirement of "competitive harm" onto FOIA Exemption 3 as WG advocates.[10] Such a radical reworking of the "good business practice" exception falls within the province of Congress, not within the ambit of the courts.

IV.

The district court also held that the data at issue was properly withheld under FOIA Exemption 4, 5 U.S.C. § 552(b)(4). Section 552(b)(4) provides that FOIA does not apply to matters that are "trade secrets and commercial or financial information obtained from a person and privileged or confidential." In this case, WG contested whether the information was (1) submitted by a person; and (2) privileged or confidential.

Because we find the spreadsheet data was properly withheld under Exemption 3, we do not need to reach the issue of Exemption 4's applicability to this data. Thus, we do not decide which test governs within the Fourth Circuit for determining whether information is confidential. *Compare Acumenics Research & Tech. v. Dept. of Justice*, 843 F.2d 800, 807 (4th Cir. 1988) (applying the *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765 (D.C. Cir. 1974), test for confidentiality under Exemption 4), *with Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 877-79 (D.C. Cir. 1992) (en banc) (modifying the *National Parks* test in cases in which information is voluntarily submitted to the government).

---

[10]In any event, the district court repeatedly found that even if Exemption 3 had an "implied competitive harm" requirement, USPS made such showings. *See, e.g.*, Dist. Ct. Op. at 15-16 (J.A. 704-05) (rejecting WG's argument that USPS has no competitive interest in the RPI data); *id.* at 17 (finding release of the data would provide USPS's competitors with "valuable proprietary information" that would have been unavailable or they would have had to develop at their own cost) (J.A. 706); *id.* at 18 (J.A. 706-07) (finding release of the information is likely to increase USPS procurement costs).

## V.

For the reasons stated above, we affirm the district court and hold that USPS properly withheld the spreadsheet data under FOIA Exemption 3. Having found Exemption 3 applicable, we do not need to review the district court's determination that Exemption 4 also applies.

Accordingly, the district court's order allowing USPS to withhold the contested data is hereby

*AFFIRMED.*

TRAXLER, Circuit Judge, concurring:

I concur with my colleagues as to the disposition of this case. I write separately, however, to emphasize my belief that the plain language of Section 410(c)(2)of the Postal Reorganization Act is sufficient to satisfy the requirements of Exemption 3 of the Freedom of Information Act.

Exemption 3 of FOIA states that the provisions of FOIA do not apply to matters that are "specifically exempted from disclosure by statute . . . provided that such statute either (A) . . . [requires withholding] in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C.A. § 552(b)(3) (West 1996 & Supp. 2003). Section 410(c)(2) of the Postal Reorganization Act, 39 U.S.C.A. § 410(c)(2), clearly satisfies the second requirement of Exemption 3. Section 410(c)(2) provides that the Postal Service may withhold from a FOIA request "information of a commercial nature, including trade secrets, whether or not obtained from a person outside the Postal Service, which under good business practice would not be disclosed. 39 U.S.C.A. § 410(c)(2) (West 1980).

Wickwire Gavin contends that this court should read into the definition of a good business practice a requirement that the disclosure of information would result in a competitive harm. I disagree. When "the statute's language is plain, the sole function of the courts is to enforce

it according to its terms." *United States v. Ron Pair Enters. Inc.*, 489 U.S. 235, 241 (1989)(internal quotation marks omitted). "Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) (internal quotation marks omitted). The language of Section 410(c)(2) clearly states that the Postal Service may withhold "information of a commercial nature . . . which under good business practices would not be publicly disclosed." 39 U.S.C.A. § 410(c)(2). Because the statutory language is clear, we need look no further.