**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

T.D., by and through his guardians A.D. and J.D., Appellants,

v.

Richland County School District Two, Respondent.

Appellate Case No. 2019-001603

———————

Appeal From Richland County
L. Casey Manning, Circuit Court Judge

———————

Opinion No. 2024-UP-310
Heard September 13, 2022 – Filed September 11, 2024

———————

**AFFIRMED**

———————

Donald Michael Mathison, of Columbia, for Appellants.

Jasmine Rogers Drain and Vernie L. Williams, both of Columbia, for Respondent.

———————

**MCDONALD, J.:** Following an investigation into social media messages containing threats to shoot students at Blythewood Middle School, Richland County School District Two (the District) conducted an expulsion hearing and expelled Blythewood student T.D. for the remainder of the school year. T.D.'s grandparents, A.D. and J.D., appealed the circuit court's order affirming this

expulsion, arguing the circuit court applied an incorrect standard of review in considering their claims that (1) the District's hearing process violated T.D.'s right to procedural due process and (2) the District violated South Carolina law by accessing T.D.'s juvenile records. We affirm the order of the circuit court.

**Facts and Procedural History**

On December 1, 2018, Officer Josh Robinson of the Richland County Sheriff's Office (RCSO), responded to a parent's report of Snapchat messages sent by a student threatening to shoot people at school the following Monday. The messages were not directed at the complainant's child; the child learned of them from the student recipients and told his parent. Officers spoke with the student recipients, who showed them the messages purportedly sent by another student, T.D.

RSCO Sergeants Steffany Boyd and Chris Truluck responded to T.D.'s home, where his grandparent guardians consented to a search. Sergeant Truluck informed Grandparents that T.D. would be unable to attend school the next day; he noted the middle school (School) would contact them regarding T.D.'s status.

Sergeant Truluck then notified the School's principal, Karis Mazyck (Principal) of the reports that T.D. sent the threatening messages. The message most frequently referenced during the subsequent expulsion proceedings stated:

> I want my shit on Monday or all I know is u and him is getting shot in school…I don't give a [f***] I want my shit Monday…my pistol is coming to school with me…and if I don't get my juul I'm shooting both of y'all and a ton of other people.

(ellipses in original). Another message read, "I know one thing a 9mm is coming to school with me and if I get search [sic] I will shoot the school up and if I don't get my juul I'm shooting the school up."

The Principal contacted Grandparents, who claimed T.D. denied sending the messages. On December 5, 2018, the Principal notified Grandparents that T.D. had been recommended for expulsion as of December 3, 2018, because he used social media to threaten other students in violation of District policy. The District appointed Director of Student Services Lottie Chisolm (the Hearing Officer) as the hearing officer; the Hearing Officer then wrote to Grandparents, confirming that the Principal had recommended T.D. for expulsion and notifying them of a "due

process" hearing scheduled for December 12, 2018.  The Hearing Officer also informed Grandparents of their right to retain counsel.

Pursuant to the Principal's request for law enforcement's records, Officer Truluck sent her all RCSO records in the investigation along with other records related to T.D.  In sending the records, Officer Truluck advised, "Of course as you know it involves a Juvenile so it is not allowed to the general public at this time please."  The Principal responded that she wanted to share the information with her supervisor and the Hearing Officer as part of her recommendation for expulsion.

Before starting the hearing, the Hearing Officer instructed the Principal to meet with T.D. and Grandparents, disclose the District's evidence against T.D., and give T.D. the opportunity to "tell [his] side of the story."  At this conference, T.D. claimed he did not send the messages and noted several people knew his Snapchat login information.  The Principal explained that she recommended T.D. for expulsion because of the threat to other students, the threat against the school, and the information in the RCSO incident report.  At this time, Grandparents were unaware of the RCSO incident report.

During the hearing, the Hearing Officer questioned T.D. about the current incident, as well as a prior incident involving social media messages.[1]  T.D. denied sending the messages, said he no longer had a phone, and claimed someone else must have accessed his account to send the messages.  According to Grandparents, T.D. sold his phone over the Thanksgiving weekend because his service had been turned off, and they did not know how T.D. could have sent the messages without a phone.

The Hearing Officer then read the RCSO incident report, which noted T.D. admitted to using his biological mother's phone while at the emergency room. T.D.'s grandmother explained that she knew T.D. took pictures of his injured hand[2] while at the ER, but claimed he "never got a chance" to use his mother's phone. The record and incident report contain pictures that user "Country Boy T…" posted to Snapchat, including a photo of an arm captioned, "Kids don't play with live

[1] T.D. had been subject to disciplinary action in early November 2018 for sending profane Instagram messages to a teacher.  As in this instance, T.D. claimed someone else accessed his account and sent the messages.  Following the prior incident, T.D. served an out of school suspension.

[2] T.D. punctured his hand while playing with a bullet.

shotgun shells."  Grandparents did not have access to the incident report or other law enforcement records prior to the expulsion hearing.

The Hearing Officer upheld the Principal's recommendation that T.D. be expelled for the remainder of the school year.  By letter dated January 11, 2019, the Hearing Officer notified T.D. and Grandparents of her decision and of their right to appeal her decision to the Board.  The letter explained:

> The Board will consider all of the written records in this case in determining whether it will uphold reverse or modify my decision.  You will be notified, in writing, of the Board's decision within fifteen (15) calendar days of the date of your Notice of Intent to Appeal.  Should the Board find that unusual and extenuating circumstances exist such that you will be given the opportunity to personally appear before the Board concerning your appeal, you will be notified of the date and time for that appearance.[3]

Grandparents retained counsel and appealed the Hearing Officer's decision to the Board.  On February 5, 2019, Grandparents requested another hearing and asked that the record be reopened.  The Board agreed to allow Grandparents and T.D. to attend the Board's proceeding.

On February 8, 2019, Grandparents requested that all witnesses against T.D. be present at the new hearing, including "[a]ny student who has given a statement that has been submitted in connection with this matter."  Grandparents claimed they were not given the opportunity to question the student witnesses or the investigator who prepared the incident report, noting the District had not revealed the identities of all witnesses.  Grandparents requested that the District reopen the record for additional testimony and make all witnesses, including the threatened students, available.  They argued any hearing conducted without providing the opportunity to confront and cross-examine *all* witnesses would not cure the deficiencies they alleged occurred in connection with the prior expulsion proceeding.

In response, the District proposed remanding the matter for a new hearing before a new hearing officer—a retired administrator.  The District explained, "Our reason

---

[3] At some point prior to sending this letter, the Hearing Officer called Grandparents and informed them of T.D.'s pending expulsion.

for this proposal was in light of the concerns that you raised that, even if the Board were to make a decision, included in the record for the Board's consideration are law enforcement records to which you object based on your client's status as a juvenile."  The District indicated the Board would need to vote on Grandparents' other requests at its upcoming meeting.

The Board heard T.D.'s appeal on February 12, 2019.  On February 18, 2019, the Board notified T.D. and Grandparents of its decision to uphold T.D.'s expulsion. The letter noted Grandparents had declined the opportunity for a new hearing and instead chose to proceed with their appeal.

Grandparents timely appealed the Board's decision to the circuit court and requested injunctive and declaratory relief.  Grandparents sought an order declaring (1) the District violated Sections 63-19-810 and 2020(E) of the South Carolina Code (2010) by failing to develop and implement policies concerning the privacy of juvenile records and (2) the District's policy of failing to give students recommended for expulsion the opportunity to question all witnesses violated Article I, Section 22 of the South Carolina Constitution and Section 59-63-240 of the South Carolina Code (2020).

The circuit court upheld T.D.'s expulsion, finding the decision to expel him was supported by the substantial evidence in the record and T.D. was afforded due process.  The circuit court further found the District did not violate South Carolina law governing the confidentiality of juvenile records, noting the "law allows juvenile records to be used for supervising, monitoring, and meeting the educational needs of students."  The circuit court denied Appellants' request for injunctive or declaratory relief, finding  (1) "any procedural errors either were not prejudicial to T.D., or were cured on appeal" and (2) the request to reinstate T.D. in the eighth-grade setting for the remainder of the school year was moot due to the start of a new school year and T.D.'s ability to apply for readmission.

**Analysis**

**I.  Standard of Review Applied by the Circuit Court**

Grandparents argue the circuit court erred in applying a substantial evidence standard of review because their appeal of the Board's decision raised questions of law and statutory interpretation.  We find no error.

The circuit court properly relied on *Doe v. Richland County School District Two*, 382 S.C. 656, 659, 677 S.E.2d 610, 611 (Ct. App. 2009), in support of its finding that South Carolina courts have applied a substantial evidence standard of review in expulsion cases, including those addressing questions of due process.  In *Doe*, the circuit court reversed the student's expulsion, finding it was unsupported by substantial evidence and the student's due process rights were violated.  *Id.*  On appeal, this court explained, "Judicial review of the school board's decision is limited to ascertaining whether the board's decision is supported by substantial evidence" and affirmed the reversal of Doe's expulsion.  *Id.*

We find the circuit court correctly applied a substantial evidence standard in upholding T.D.'s expulsion.  And, for the reasons discussed below, we agree with the circuit court's finding that T.D. was afforded the requisite due process.

## II.  Due Process

In addressing Appellants' due process claims, the circuit court concluded, "While Appellants may dispute the Board's outcome, this Court finds any procedural errors either were not prejudicial to T.D., or were cured on appeal, and that the Student was afforded [the] due process required under applicable law."  Appellants challenge the circuit court's findings, arguing: (1) the District violated T.D.'s right to due process before the Hearing Officer because T.D. was not provided proper notice of the allegations and evidence against him; (2) the Principal withheld evidence from Grandparents and T.D.; (3) the Hearing Officer erroneously acted as both prosecutor and finder of fact; and (4) the hearing before the Board did not cure the deficiencies before the Hearing Officer because T.D. was not permitted to introduce new evidence nor was he able to question all witnesses.

Appellants contend the Board's refusal to remand the case for a new hearing in which they could ask questions of all witnesses, including the threatened students, violated T.D's rights to confront his accusers, the applicable statutes, and District policies.  To address these claims, we must consider the authorities applicable to Appellants' constitutional challenge while also recognizing the flexibility school officials must be afforded in balancing the constitutional interests of an individual student against legitimate school safety concerns.

Article I, Section 22 of the South Carolina Constitution provides:

> No person shall be finally bound by a judicial or
> quasi-judicial decision of an administrative agency

affecting private rights except on due notice and an opportunity to be heard; nor shall he be subject to the same person for both prosecution and adjudication; nor shall he be deprived of liberty or property unless by a mode of procedure prescribed by the General Assembly, and he shall have in all such instances the right to judicial review.

"[T]he fact that investigative, prosecutorial, and adjudicative functions are performed within the same agency, or even performed by the same persons within an agency, does not, without more, constitute a violation of due process." *Majors v. S.C. Sec. Comm'n*, 373 S.C. 153, 161, 644 S.E.2d 710, 714 (2007) (quoting *Garris v. Governing Bd. of S.C. Reinsurance Facility*, 333 S.C. 432, 443, 511 S.E.2d 48, 54 (1998)).

The authority possessed by the State to prescribe and enforce standards of conduct in its schools, although concededly very broad, must be exercised consistently with constitutional safeguards. Among other things, the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause.

*Goss v. Lopez*, 419 U.S. 565, 574 (1975).

"Expulsion is a more serious disciplinary action than is suspension. Accordingly, the procedures and protections given to the accused student should be greater than the informal, immediate hearing that was authorized in *Goss*." *Stinney v. Sumter Sch. Dist. 17*, 391 S.C. 547, 551, 707 S.E.2d 397, 399 (2011). Our supreme court has held the expulsion process promulgated in § 59-63-240 satisfies constitutional due process requirements. *Id*. at 551–52, (noting "[t]he Stinneys chose not to be represented by counsel during the initial hearing, and the fact they did not present evidence or exercise their statutory right to question witnesses does not create a procedural due process violation").

The version of section 59-63-240 in effect at the time of T.D.'s expulsion hearing provided:

The board may expel for the remainder of the school year a pupil for any of the reasons listed in Section 59-63-210. If procedures for expulsion are initiated, the parents or legal guardian of the pupil shall be notified in writing of the time and the place of a hearing either before the board or a person or committee designated by the board. At the hearing the parents or legal guardian shall have the right to legal counsel and to all other regular legal rights including the right to question all witnesses. If the hearing is held by any authority other than the board of trustees, the right to appeal the decision to the board is reserved to either party. The hearing shall take place within fifteen days of the written notification at a time and place designated by the board and a decision shall be rendered within ten days of the hearing. The pupil may be suspended from school and all school activities during the time of the expulsion procedures. The action of the board may be appealed to the proper court. The board may permanently expel any incorrigible pupil.

§ 59-63-240.[4]

"Due process does not require a trial-type hearing in every conceivable case of government impairment of a private interest. Rather, due process is flexible and calls for such procedural protections as the particular situation demands." *Kurschner v. City of Camden Plan. Comm'n*, 376 S.C. 165, 171–72, 656 S.E.2d 346, 350 (2008) (citations omitted).

While schools are required to provide students with some level of due process, "'maintaining security and order in

---

[4] The General Assembly recently amended § 59-63-240, effective May 21, 2024, to add that this written notification must include "contact information for a legal aid service provider which may determine eligibility for free legal representation. The notification must also include the right to access the investigative file in its entirety, to include all documents and videos, at least three days prior to the hearing, with appropriate exemptions and redactions as required by the Family Educational Rights and Privacy Act, 20 U.S.C. Section 1232g." 2024 Act No. 194, § 1. In the current matter, we rely on the version of the statute in effect at the time of T.D.'s expulsion proceeding before the Hearing Officer.

the schools requires a certain degree of flexibility in school disciplinary procedures, and we have respected the value of preserving the informality of the student-teacher relationship.'"  Moreover, schools require this flexibility because they "need . . . to control such a wide range of disruptive behavior."  In other words, "the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions."

*Kowalski v. Berkeley Cnty. Sch.*, 652 F.3d 565, 575 (4th Cir. 2011) (citations omitted).  "[S]chool officials have been afforded substantial leeway to depart from the prohibitions and procedures that the Constitution provides for society at large.  Such leeway is particularly necessary when school discipline is involved."  *Wofford v. Evans*, 390 F.3d 318, 323 (4th Cir. 2004).

Here, most of Appellants' concerns would have been cured at the new hearing before a different hearing officer—an opportunity Appellants were offered but chose to decline.  Although the District did not guarantee *all* witnesses would be available, as it could not require the presence of student witnesses it had no authority to compel, the District indicated it would request the presence of the investigating law enforcement officers.  Further, the District's counsel explained that while the District would request the attendance of the adult witnesses, those witnesses would need to appear at the new evidentiary hearing—not at the Board's appellate proceeding.

WL 9239785, at *6 (D.S.C. Dec. 17, 2015) (citing *Newsome v. Batavia Loc. Sch.*

expulsion hearing before an impartial trier-of-fact," and finding due process did not require that student be permitted to cross-examine student accusers) and *Brewer ex rel. Dreyfus v. Austin Indep. Sch. Dist.*, 779 F.2d 260, 263 (5th Cir. 1985) (rejecting student's due process argument based on the inability to confront and cross-examine student witnesses where summaries of students' statements were read to him at the hearing)).

Moreover, the Board's refusal to reopen the record at its appellate proceeding did not violate T.D.'s due process rights. The Board was sitting in an appellate capacity when it considered T.D.'s expulsion. The Board's policy is to review decisions based on the "established record" consisting of the recording of the hearing officer's proceeding and the documentary evidence presented there. We find no error in the Board's refusal to reopen the appellate record, particularly as the Board offered Grandparents a remand and the opportunity to present additional evidence before a new hearing officer.

We acknowledge and echo Grandparents' concern that law enforcement's records, including the student statements and message screenshots, were not made available to them prior to the proceeding before the first Hearing Officer. However, any prejudice T.D. suffered from the District's initial disclosure failure would have been cured at a new hearing before a different hearing officer.

Finally, while we see no evidence in the record that the Hearing Officer acted as both factfinder and prosecutor, such concerns may have likewise been alleviated through the procedure offered on remand. Grandparents contend the Hearing Officer was biased against T.D., but our review of the audio recording reveals no such bias. The Hearing Officer asked several questions of T.D. and certainly seemed to doubt his story that someone else had managed to log in to his Snapchat account and send the threatening messages. But the record contains no evidence of any actual bias, and Grandparents' allegations regarding the Hearing Officer's questioning do not rise to a level that would implicate Article I, Section 22's prohibition. *See Marshall v. Cuomo*, 192 F.3d 473, 484 (4th Cir. 1999) ("It is well established that due process rights are not violated simply by the combination of the investigative, prosecutorial, and adjudicative functions in one agency. Rather, actual bias or a high probability of bias must be present before due process concerns are raised.").

## III. T.D.'s Juvenile Records

Grandparents next assert the circuit court erred by failing to dismiss the expulsion proceeding due to the District's violation of South Carolina law mandating the confidentiality of juvenile records.  Specifically, Grandparents allege the District violated § 63-19-810(C), addressing law enforcement's notification of a school principal when a juvenile is charged with a misdemeanor or a felony, and § 63-19-2020(E), providing for notification of a juvenile's school principal of the disposition of certain criminal offenses and requiring that school districts develop policies "to ensure that the confidential nature of a child offense history and other information received is maintained."  Appellants contend the District's policies lack the statutorily mandated language necessary "to protect and safeguard juvenile information."

Section 63-19-810(C) requires:

> When a child is charged by a law enforcement officer for an offense which would be a misdemeanor or felony if committed by an adult, not including a traffic or wildlife violation over which courts other than the family court have concurrent jurisdiction as provided in Section 63-3-520, the law enforcement officer also shall notify the principal of the school in which the child is enrolled, if any, of the nature of the offense.  This information may be used by the principal for monitoring and supervisory purposes but otherwise must be kept confidential by the principal in the same manner required by Section 63-19-2220(E).[5]

§ 63-19-810(C).

Section 63-19-2020(A) provides, in pertinent part:

> Except as provided herein, all information obtained and records prepared in the discharge of official duty by an employee of the court or department are confidential and must not be disclosed directly or indirectly to anyone,

---

[5] § 63-19-2220(E) references "the effective tracking and supervision of juveniles" pursuant to the Interstate Compact for Juveniles.

other than the judge, the child's attorney, or others entitled under this chapter or any other provision of law to receive this information, unless otherwise ordered by the court.

Section 63-19-2020(E)(1) mandates that the Department of Juvenile Justice notify the principal of a school in which a child is enrolled "upon final disposition of a case in which the child is charged" with certain specified offenses. Section 63-19-2020(E)(2) requires:

In considering her recommendation for expulsion, the Principal requested Officer Truluck's incident report regarding T.D. and the social media threats. In response, Officer Truluck provided all of T.D.'s juvenile records. Section 63-19-810(C) specifically allows a school principal to use such records "for monitoring and supervisory purposes" while otherwise maintaining confidentiality. We agree with the circuit court that Appellants have failed to provide support for their argument that the Principal or other school official involved with T.D.'s disciplinary

proceeding violated the statutory parameters relating to the proper use and confidentiality of T.D.'s records.[6]

**Conclusion**

Following their review of the evidence to which they were statutorily entitled, Appellants were offered a new hearing before a different hearing officer. They declined. Thus, for the reasons discussed above, the order of the circuit court is

**AFFIRMED.**

**GEATHERS, J., and HILL, A.J., concur.**

---

[6] To the extent Appellants' argument regarding the language of the District's juvenile records confidentiality policy is not moot, Appellants have failed to establish how the District's policy is lacking for purposes of § 63-19-2020(E). As the circuit court recognized, the policy named the Principal as the custodian of all student records for her school, contained language "regarding the retention and destruction of records," and "provided that the school would maintain student records in a confidential manner and comply with all state and federal law, including the Family Educational Rights and Privacy Act ("FERPA") regarding publication and dissemination of student records."